IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| IN RE GRAND JURY SUBPOENA<br>Subpoena # 2022R00519-A | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Case Number: _____<br><br>**FILED UNDER SEAL** |

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO QUASH GRAND JURY SUBPOENA

RECEIVED

FEB 02 2026

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

## I.   INTRODUCTION

Governor Timothy Walz, as an individual and the Officeholder of the Governor of the State of Minnesota, and the Office of the Governor, by and through counsel, moves to quash the grand jury subpoena served on January 20, 2026 (Subpoena # 2022R00519-A, attached hereto as Exhibit A), commanding testimony and the production of materials, including internal communications detailing the innerworkings of the Office of the Governor of Minnesota and that Office's interactions with state agencies, related to federal immigration enforcement in the State of Minnesota.

On its face, the subpoena is a brazen intrusion into state sovereign interests and a blatant attempt to intimidate and harass those whom President Trump perceives as political adversaries and who speak out against his Administration's actions.   Lacking any legitimate investigative purpose, the subpoena—the existence of which was disclosed in apparent violation of federal grand jury secrecy rules and then repeatedly publicized by senior Administration officials—is a transparent effort to exert public pressure on Governor Walz to compel him into actively promoting the President's federal immigration agenda and related policies.   Through this subpoena, the President and Department of Justice intend not only to chill Governor Walz's protected speech, but also to pressure Minnesota's elected state leaders to comply with the federal government's immigration enforcement agenda, in violation of the First and Tenth Amendments.   Such an abuse of the grand jury process and criminal justice system is abhorrent in any circumstance, but especially when it targets constitutionally protected political speech and undermines the fundamental principles that underlie our federalist system.

1

Although quashing a grand jury subpoena is reserved for only the most exceptional circumstances, the extraordinary subpoena here compels that extraordinary relief. While grand juries possess broad investigatory powers, those powers "are . . . not unlimited," and they may not be deployed to advance a President's political agenda through "arbitrary fishing expeditions" or to engage in actions motivated "out of malice or an intent to harass." *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991).

The President's unrelenting efforts to weaponize the Department of Justice—to erode its independence, to destroy the presumption of regularity, and to target individuals based on political animus—cannot be permitted to distort the grand jury process. Quashing this subpoena is essential not only to prevent further abuse, but also to safeguard the constitutional principles and federalist structure that protect all state officials, current and future, from precisely this kind of unlawful federal overreach for impermissible ends.

## II.   FACTUAL BACKGROUND

### A.   The Federal Government's Targeting of Minnesota has Led to Increased Tensions Between State and Local Leaders.

Since the start of his second term, President Trump has deployed federal law enforcement resources in a series of jurisdictions led by Democratic officials in states that did not vote for him, provoking confrontations with state and local leaders who have publicly opposed his Administration's policies.[1] Beginning in early December 2025, at the

---

[1] *See, e.g.*, Samantha Waldenberg & Priscilla Alvarez, *Trump orders ICE officers to expand deportation efforts in Democratic cities*, CNN (June 16, 2025), https://www.cnn.com/2025/06/16/politics/trump-immigration-democratic-deportation-efforts; Michelle Price & Sophia Tareen, *Trump says Illinois governor and Chicago mayor should be jailed as they oppose Guard deployment*, AP NEWS (Oct. 8, 2025), (continued...)

direction of President Trump and his Secretary of Homeland Security, the U.S. Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") launched Operation Metro Surge, an unprecedented federal incursion into Minnesota that DHS itself has called "the largest immigration enforcement operation ever carried out."[2]

The federal government's execution of Operation Metro Surge and related enforcement activities has already resulted in the killings of two Minnesota residents and U.S. citizens: Renée Good and Alex Pretti;[3] the persistent use of excessive force on peaceful protestors;[4] the detention of children as young as five- and two-years old;[5] a reported memorandum instructing ICE agents that they can lawfully enter homes without a judicially approved warrant;[6] and an ever-increasing number of widely publicized

---

https://apnews.com/article/trump-chicago-pritzker-johnson-national-guard-illinois-3ca116f867916ac6538bf45ce391c94c.

[2] Rebecca Santana & Mike Balsamo, *Homeland Security plans 2,000 officers in Minnesota for its 'largest immigration operation ever'*, AP NEWS (Jan. 6, 2026), https://apnews.com/article/immigration-enforcement-ice-noem-minnesota-somali-db661df6de1131a034da2bda4bb3d817.

[3] Shaquille Brewster et al., *Immigration agents deploy tear gas, pepper spray in Minneapolis as confrontations with protesters grow*, NBC NEWS (Jan. 13, 2026), https://www.nbcnews.com/news/us-news/immigration-agents-deploy-tear-gas-pepper-spray-minneapolis-confrontat-rcna253782; Cheryl W. Thompson, *Man shot dead by federal immigration officers in Minneapolis*, NPR (Jan. 24, 2026), https://www.npr.org/2026/01/24/nx-s1-5687276/man-shot-dead-minneapolis.

[4] *Id.*

[5] Joe Augustine, *ICE agents detaining teens, toddlers in Minnesota*, FOX 9 KMSP (Jan. 23, 2026), https://www.fox9.com/news/ice-agents-detaining-teens-toddlers-minnesota-jan-2026; Rebecca Cohen et al., *ICE detains 4 Minnesota students, including 5-year-old, school district says*, NBC NEWS (Jan. 22, 2026), https://www.nbcnews.com/news/us-news/ice-detains-4-minnesota-students-5-year-old-school-district-says-rcna255366.

[6] Hamed Aleaziz and Charlie Savage, *ICE Expands Power of Agents to Arrest People Without Warrants*, N.Y. TIMES (Jan. 30, 2026), https://www.nytimes.com/2026/01/30/us/politics/ice-expands-power-agents-warrants.html.

encounters between federal law enforcement and Minnesota residents that have drawn condemnation from across the political spectrum.[7] These and other actions, driven largely by excessive and unconstitutional force, have led to an increase in tensions between state and federal leaders.

**B.    Governor Walz Exercised His First Amendment Right to Speak Out Against the Administration's Policies, While Encouraging Peaceful Protest.**

Governor Walz has exercised his constitutional right to express his opposition to those operations while acting as the state's elected leader to urge calm and promote de-escalation. Governor Walz fundamentally disagrees with Operation Metro Surge and the President's immigration agenda more broadly and has publicly expressed his views. Governor Walz has in no way encouraged violence and has in fact consistently implored Minnesotans to reject violence in favor of peaceful, lawful protest.[8] Most recently, following the killing of Alex Pretti on January 24, 2026, Governor Walz reiterated his call

---

[7] *See, e.g.*, Lisa Kashinsky and Natalie Fertig, *'Our cities are no longer safe': GOP mayors condemn Trump immigration enforcement*, POLITICO (Jan. 28, 2026), https://www.politico.com/news/2026/01/28/republican-mayors-trump-ice-00754195; Claire Stremple, *Murkowski condemns Noem and ICE actions: 'I think it is probably time for her to step down'*, ALASKA BEACON (Jan. 27, 2026), https://alaskabeacon.com/2026/01/27/murkowski-condemns-noem-and-ice-actions-i-think-it-is-probably-time-for-her-to-step-down/; Tara Suter, *Democrats condemn 'horrifying' ICE shooting in Minneapolis*, THE HILL (Jan. 7, 2026), https://thehill.com/homenews/state-watch/5677439-democrats-condemn-ice-shooting-minneapolis/.

[8] *See, e.g.*, Andrew Hazzard, *Walz urges Minnesotans to protest ICE shooting peacefully, says he'll prepare National Guard*, SAHAN JOURNAL (Jan. 7, 2026), https://sahanjournal.com/immigration/governor-tim-walz-ice-shooting-south-minneapolis-krisit-noem/; Image posted by Governor Walz (@mngovernor), Instagram (Jan. 15, 2026), https://www.instagram.com/p/DTiZpTLkcpa/?igsh=a2wwdGVsYnhsOWZj ("And an appeal to Minnesotans: I know this is scary. We can — we must — speak out loudly, urgently, but also peacefully. We cannot fan the flames of chaos. That's what [President Trump] wants.").

4

for peaceful demonstration, again emphasizing that those who oppose the Administration's actions cannot meet "violence with violence."[9]  Governor Walz has also made direct appeals to President Trump to "turn the temperature down [and] [s]top this campaign of retribution."[10]

Even when Governor Walz has expressed disagreement with the President's immigration agenda and actions in Minnesota, he has done so in efforts to run his state, a job that the people of Minnesota elected him to do.  Governor Walz has remarked that "[t]he president has also chosen, and I stress this, chosen, to tear up the values that once made America the shining light of the world."[11]  He condemned ICE's detainment of two U.S. citizens, calling the federal immigration enforcement operations underway in the state "chaotic," "racially motivated," and "reckless."[12]  And, he observed that the presence of federal immigration enforcement authorities in Minnesota is "not keeping people safe, it's

---

[9] Matt McConico, *READ IT: Gov. Walz statement following Border Patrol killing Minnesota man*, FOX21 LOCAL NEWS (Jan. 24, 2026), https://www.fox21online.com/2026/01/24/read-it-gov-walz-statement-following-border-patrol-killing-minnesota-man/.

[10] Sarah Fortinsky, *Walz to Trump after threat of troops: 'Let's turn the temperature down'*, THE HILL (Jan. 15, 2026), https://thehill.com/homenews/state-watch/5691004-minnesota-gov-appeals-trump/.

[11] Danielle Wallace, *White House torches Tim Walz's speech about Trump's 'gulags,' 'chaos': 'His largest city burned to the ground'*, FOX NEWS (Apr. 24, 2025), https://www.foxnews.com/politics/white-house-torches-tim-walzs-speech-about-trumps-gulags-chaos-his-largest-city-burned-ground?msockid=29cc7518a5fb68fe26016345a4c669e8.

[12] Madison Hunter, *Gov. Walz addresses US citizens detained by ICE; calls operations 'chaotic'*, FOX 9 (Dec. 12, 2025), https://www.fox9.com/news/gov-walz-us-citizens-arrested-dec-12-2025.

putting people at risk. It's putting the people they say they're targeting at risk, it's putting other innocent Minnesotans at risk, it's putting law enforcement at risk."[13]

Even as he has publicly disagreed with the Trump Administration's approach to immigration enforcement in Minnesota, Governor Walz has emphasized that the federal government maintains authority to enforce federal immigration laws. For example, in November 2025, Governor Walz publicly called on President Trump to conduct humane immigration enforcement, saying, "Do your job. Get the criminals out. Secure our border. But do it with dignity and respect to the American tradition of respecting immigrants as [*sic*] refugees as a beacon of hope."[14] More recently, in response to mounting concerns regarding Operation Metro Surge, Governor Walz issued the following public statement imploring the President to reconsider his Administration's approach to immigration enforcement in Minnesota, writing, "Minnesota has had it. This is sickening. **The President must end this operation.** Pull the thousands of violent, untrained officers out of Minnesota. Now."[15]

---

[13] *'It's putting people at risk': Walz, Twin Cities leaders denounce ICE immigration operations*, KSTP (Dec. 24, 2025), https://kstp.com/kstp-news/top-news/walz-twin-cities-leaders-to-talk-ice-immigration-operations/.

[14] *Meet the Press - November 30, 2025*, NBC NEWS (Nov. 30, 2025), https://www.nbcnews.com/meet-the-press/meet-press-november-30-2025-n1313101.

[15] Yun Li, *Gov. Walz calls on Trump to halt ICE operations in Minnesota after another fatal shooting*, CNBC (Jan. 24, 2026) (emphasis added), https://www.cnbc.com/2026/01/24/walz-trump-ice-shooting.html?msockid=29cc7518a5fb68fe26016345a4c669e8.

**C.     President Trump and Senior Justice Department Officials Have Threatened Governor Walz for Exercising His First Amendment Rights and Sought to Coerce Minnesota State Leaders to Enact Their Preferred Policy Agenda.**

Governor Walz's public efforts to encourage calm amid ever-increasing tensions arising from federal immigration enforcement operations in Minnesota stands in stark contrast to the public statements of federal officials overseeing those operations. Since the start of Operation Metro Surge, federal officials—including the President and senior Justice Department representatives—have employed inflammatory rhetoric and threats to chill Governor Walz from speaking out against the President and to coerce the Governor and Minnesota state leaders into carrying out the Administration's preferred immigration enforcement agenda.

On January 14, 2026, Deputy Attorney General Todd Blanche falsely accused Governor Walz and Minneapolis Mayor Jacob Frey of "encouraging violence against law enforcement," before labeling their political opposition as "terrorism:" "Walz and Frey - I'm focused on stopping YOU from your terrorism by whatever means necessary. This is not a threat. It's a promise."[16] The next day, President Trump likewise threatened, "If the corrupt politicians of Minnesota don't obey the law and stop the professional agitators and insurrectionists from attacking the Patriots of I.C.E., . . . I will institute the INSURRECTION ACT . . . ."[17] Other senior administration officials have echoed the

---

[16] Todd Blanche (@DAGToddBlanche), X (Jan. 14, 2026, at 8:03 PM CT), https://x.com/DAGToddBlanche/status/2011620198751597028.

[17] Donald J. Trump (@realDonaldTrump), Truth Social (Jan. 15, 2026, at 7:04 AM CT), https://truthsocial.com/@realDonaldTrump/posts/115899252938886431. The Insurrection Act (continued...)

President's language, falsely suggesting that there is an insurgency in Minnesota that would justify the deployment of the U.S. military in the state.[18] Despite President Trump's false claims that the protesters are "paid agitators and insurrectionists,"[19] Minnesotans continue to exercise their constitutional rights by observing law enforcement and peacefully protesting in the presence of more than 3,000 federal agents.[20]

Far from echoing Governor Walz's calls for peaceful de-escalation, President Trump has publicly and explicitly threatened those who, like Governor Walz, have opposed his Administration's immigration enforcement policies in Minnesota. For example, following the killing of Renée Good on January 7, 2026, President Trump claimed that Minnesota Democrats, including Governor Walz, "love the unrest" in their communities before concluding, "FEAR NOT, GREAT PEOPLE OF MINNESOTA, THE DAY OF RECKONING & RETRIBUTION IS COMING!"[21] And, following the killing of the Alex

---

grants the President the authority to deploy the U.S. military domestically and use it against Americans, which, if instituted, would reflect a grave escalation of federal power against a state. *See* 10 U.S.C. §§ 251–255; *see also* Kate Plummer, *Why Trump's Insurrection Act Threats Poses 'Imminent Danger': Professor*, NEWSWEEK (Oct. 9, 2025), https://www.newsweek.com/why-trumps-insurrection-act-threats-poses-imminent-danger-10853010.

[18] *See, e.g.*, Alex Griffing, *Stephen Miller Raises the Temperature on Minnesota Protests: 'This is Clearly an Insurgency'*, MEDIAITE (Jan. 15, 2026), https://www.mediaite.com/media/news/stephen-miller-raises-the-temperature-on-minnesota-protests-this-is-clearly-an-insurgency/.

[19] Maria Briceño & Amy Sherman, *Fact-checking Trump's claim that anti-ICE protesters are 'paid agitators and insurrectionists'*, PBS NEWS (Jan. 27, 2026), https://www.pbs.org/newshour/politics/fact-checking-trumps-claim-that-anti-ice-protesters-are-paid-agitators-and-insurrectionists.

[20] *ICE in MN: More than 3,000 federal agents in MN for Operation Metro Surge, DOJ attorney says*, FOX 9 KMSP (Jan. 26, 2026), https://www.fox9.com/news/ice-minnesota-how-many-feds-minnesota.

[21] Donald J. Trump (@realDonaldTrump), Truth Social (Jan. 13, 2026, at 7:40 AM CT), https://truthsocial.com/@realDonaldTrump/posts/115888070937502023.

8

Pretti roughly two weeks later, President Trump dismissed Governor Walz's calls for peace as "pompous, dangerous, and arrogant."[22]

**D.     Federal Officials Publicized Their Investigation and the Instant Subpoena in Violation of the Federal Rules of Criminal Procedure to Further Threaten and Coerce State Leaders.**

On January 16, 2026, four days before the subpoena was served, several media outlets reported that the Justice Department was preparing to issue grand jury subpoenas targeting Governor Walz and Mayor Frey.[23]   Two of those articles, published by the *Washington Post* and CBS News, specifically reported that details regarding the Justice Department's grand jury investigation were leaked by unidentified federal government "officials."  The *Washington Post* reported:

> The Justice Department is planning to issue subpoenas for Minnesota Gov. Tim Walz and Minneapolis Mayor Jacob Frey as part of an investigation alleging that the two Democratic leaders are impeding federal law enforcement officers' abilities to do their jobs in the state, *two people familiar with the matter* confirmed Friday.
>
> . . .
>
> One of the people familiar with the case confirmed that the plan was to serve the subpoenas Friday. The people spoke on the condition of anonymity to discuss an open investigation. Neither Walz nor Frey had been served with a subpoena by early Friday evening, spokespeople for *the officials* said.[24]

---

[22] Peter Aitken, *Donald Trump Reacts to Fatal Minneapolis Shooting*, NEWSWEEK (Jan. 24, 2026), https://www.newsweek.com/donald-trump-reacts-fatal-minneapolis-shooting-11412712.

[23] The instant subpoena was servedon Governor Walz's office on January 20, 2026.

[24] Perry Stein, *Justice Dept. Launches Criminal Investigation of Minnesota Governor*, WASH. POST (Jan. 16, 2026) (emphasis added), https://www.washingtonpost.com/national-security/2026/01/16/trump-minnesota-walz-frey-criminal-investigation/.

Similarly, CBS News reported:

> The Justice Department is investigating Minnesota officials, including Gov. Tim Walz and Minneapolis Mayor Jacob Frey, over an alleged conspiracy to impede federal immigration agents, an extraordinary escalation in the Trump administration's clash with Democratic leaders there, multiple sources familiar with the matter told CBS News.
>
> One of the sources, *a U.S. official*, said the investigation stems from statements that Walz and Frey have made about the thousands of Immigration and Customs Enforcement officers and Border Patrol agents deployed to the Minneapolis region in recent weeks.
>
> *Subpoenas are likely to be issued in the probe*, sources familiar with the matter told CBS News.[25]

Additional articles dated on and around January 16, 2026, published by the Associated Press,[26] CNN,[27] Fox News,[28] and Reuters,[29] either state or imply that the reporters had

---

[25] Camilo Montoya-Galvez et al., *DOJ investigating Gov. Tim Walz, Minneapolis Mayor Jacob Frey over alleged conspiracy to impede immigration agents*, CBS NEWS (Jan. 16, 2026) (emphasis added), https://www.cbsnews.com/news/justice-department-investigating-tim-walz-jacob-frey-minnesota/.

[26] Alanna Durkin Richer et al., *Justice Department Investigating Whether Minnesota's Walz and Frey Impeded Immigration Enforcement*, AP NEWS (Jan. 18, 2026) ("The investigation, which both Walz and Frey said was a bullying tactic meant to threaten political opposition, focused on potential violation of a conspiracy statute, the people said. The people spoke to The Associated Press on condition of anonymity because they were not authorized to discuss a pending investigation by name."), https://apnews.com/article/minnesota-immigration-crackdown-25e46910fcc62fbf5ab341905af9891c .

[27] Kaitlan Collins et al., *DOJ Investigating Minnesota Governor, Minneapolis Mayor, who Decry Probe as Intimidation Tactic*, CNN (Jan. 17, 2026), https://www.cnn.com/2026/01/16/politics/doj-investigation-tim-walz-jacob-frey.

[28] Alexandra Koch et al., *Federal Prosecutors Open Investigation into Walz, Frey Over Alleged Impeding of Law Enforcement*, FOX NEWS (Jan. 16, 2026), https://www.foxnews.com/politics/federal-prosecutors-open-investigation-walz-frey-over-alleged-impeding-law-enforcement?msockid=29cc7518a5fb68fe26016345a4c669e8.

[29] Jana Winter & Andrew Goudsward, *US Justice Department probing Minnesota Governor Walz, other officials, source says*, REUTERS (Jan. 17, 2026), https://www.reuters.com/world/us/doj-probing-minnesota-officials-over-alleged-conspiracy-impede-immigration-2026-01-1.

10

personal discussions with members of the federal government, revealing details associated with a non-public grand jury matter.

Once federal officials leaked the investigation and grand jury subpoenas, in violation of Rule 6(e) of the Federal Rules of Criminal Procedure, senior Justice Department officials quickly amplified the leak by making public statements linking the Department's investigation to Minnesota public officials' vocal opposition to Operation Metro Surge. For example, on January 16, 2026, Attorney General Bondi posted on X: "A reminder to all those in Minnesota: No one is above the law."[30] Deputy Attorney General Blanche similarly stated on Fox News on the same day: "When the governor or the mayor threaten our officers, when the mayor suggests that he's encouraging citizens to call 911 when they see ICE officers, that is very close to a federal crime."[31] On January 18, 2026, Deputy Attorney General Blanche again appeared on Fox News to discuss the investigation into Governor Walz, saying: "Under federal law, you cannot impede a federal officer from doing their job. So, that's what we're looking at . . . ."[32]

E.    **Citing the Instant Subpoenas, the Federal Government is Demanding that Governor Walz and the State of Minnesota Enforce and Enact the President's Preferred Policies.**

The Justice Department has acknowledged—and, in fact, boasted—that the present subpoena is part of an effort to chill Governor Walz's political speech opposing the

---

[30] Attorney General Pamela Bondi (@AGPamBondi), X (Jan. 16, 2026, at 6:53 PM CT), https://x.com/AGPamBondi/status/2012327355327340947.

[31] Alexandra Koch et al., *supra* note 28.

[32] *Deputy AG calls out Dem's 'complete lie' about ICE agents amid Minneapolis protests*, FOX NEWS (Jan. 18, 2026), at 06:35–06:41, https://www.foxnews.com/video/6387906201112.

President's immigration agenda and pressure the State of Minnesota and its elected leaders to adopt that agenda and related federal policies. On January 24, 2026, Attorney General Pam Bondi wrote a letter to Governor Walz demanding that he and the state government be at the service of the federal government in three ways in exchange for "end[ing] the chaos in Minnesota":

- "First, share all of Minnesota's records on Medicaid and Food and Nutrition Service programs, including the Supplemental Nutrition Assistance Program data, with the federal government."

- "Second, repeal the sanctuary policies that have led to so much crime and violence in your state."

- "Third, allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960."[33]

The *New York Times* reported that Trump aides participated in the drafting of the Attorney General's threatening letter to Governor Walz.[34]

Appearing on Fox News, the Attorney General summarized the purpose of the letter explicitly: "We said he BETTER support President Trump."[35] And, when asked about the

---

[33] Letter from Pamela Bondi, Att'y Gen., to Tim Walz, Governor of Minnesota (Jan. 24, 2026) at 2–3, https://static.foxnews.com/foxnews.com/content/uploads/2026/01/mn_letter_1.24.26.pdf.

[34] Alan Feuer & Glenn Thrush, *Justice Dept. Playbook in Minnesota: Investigate Foes, Protect Allies*, N.Y. TIMES (Jan. 29, 2026), https://www.nytimes.com/2026/01/29/us/politics/minnesota-justice-department-trump-ice.html.

[35] Eric Daugherty (@EricLDaugh), X (Jan. 24, 2026, at 1:27 PM CT), https://x.com/EricLDaugh/status/2015144339450495457?s=20.

12

consequences if Governor Walz did not support President Trump, she said "We'll see. This is fluid. Let's see how he responds and what he does!"[36] In a subsequent social media post, the Attorney General indicated that the instant subpoena is part of the consequences of not "support[ing] President Trump,"[37] and—again unmistakably linking the Department's political and policy demands to the present investigation—reiterated that the "full weight of federal law enforcement is engaged in Minnesota[.] . . . [T]his Department of Justice is advancing action on every front. Walz, Ellison and Frey have acknowledged receipt of federal grand jury subpoenas from this DOJ."[38]

## III.   LEGAL STANDARD

The grand jury serves an important role in our justice system, by protecting the "innocent against hasty, malicious and oppressive persecution" and "determin[ing] whether a charge is founded upon reason or was dictated by . . . malice and personal ill will." *Wood v. Georgia*, 370 U.S. 375, 390 (1962); *see also Hale v. Henkel*, 201 U.S. 43, 59 (1906) (same), *overruled on other grounds by Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52 (1964).

Though grand jury proceedings are entitled to a "presumption of regularity," *Universal Mfg. Co. v. United States*, 508 F.2d 684, 685 (8th Cir. 1975), the grand jury's subpoena power "is not unlimited," *United States v. Calandra*, 414 U.S. 338, 346 (1974);

---

[36] *Id.*

[37] *Id.*

[38] Attorney General Pamela Bondi (@AGPamBondi), X (Jan. 24, 2026, at 8:07 PM CT), https://x.com/AGPamBondi/status/2015245175644168618?s=20. "U.S. officials" leaked details about the investigation and grand jury subpoenas to the media days before the subpoena was served. *See supra.*

that presumption cannot shield abuse, and a court cannot "enforce a grand jury subpoena if the grand jury is not pursuing an investigation in good faith or is motivated by a desire to harass an individual," *In re Grand Jury Proceedings*, 486 F.2d 85, 91 (3d Cir. 1973).

"Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." *R. Enters., Inc.*, 498 U.S. at 299. To prevent federal government overreach in the use of subpoenas, "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); *see also In re Grand Jury Subpoenas to Office of N.Y. State Att'y Gen.*, No. 25 Misc. 19 (LGS), 2026 WL 60793, at *10 (N.D.N.Y. Jan. 8, 2026) ("Rule 17 . . . functions as a key mechanism to ensure that the grand jury is not 'misused' by the Department of Justice." (citation omitted)). Whether a grand jury subpoena is unreasonable or oppressive is a "discretionary, case-by-case inquiry, that cannot sensibly be converted into a mechanical rule, or set of factors." *United States v. Dornsbach*, No. 0:22-cr-00048, 2023 WL 3496553, at *2 (D. Minn. May 17, 2023) (citation and internal quotations omitted) (granting in part motion to quash).

"[T]he actions of the government should be closely scrutinized" whenever there is a credible reason to believe it is abusing the grand jury's subpoena power—and that is precisely what this subpoena reflects. *United States v. Finazzo*, 407 F. Supp. 1127, 1131 (E.D. Mich. 1975). As courts have recognized, grand jury subpoenas "are in fact almost universally instrumentalities of the United States Attorney's office or of some other investigative or prosecutorial department of the executive branch." *In re Grand Jury Proceedings.*, 486 F.2d at 90. Indeed, because "the potential for abuse is so great, and the

14

consequences of a mistaken indictment so serious, . . . the obligation of the judiciary to protect against even the appearance of unfairness, [is] correspondingly heightened." *United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979). Courts have recognized that "[t]he prosecutor's abuse of his special relationship to the grand jury poses an enormous risk to defendants." *Id.*

## IV.   ARGUMENT

The Court should quash the grand jury subpoena issued to the Office of the Governor of Minnesota. The subpoena is not a neutral instrument of federal criminal process; it is the culmination of a coordinated campaign by the President and the most senior Justice Department officials to coerce a sovereign state to advance federal immigration policies, chill protected speech, and punish a political critic. Federal officials publicly demanded that local and state police "stand down and surrender,"[39] leaked the existence and subject matter of a purported grand jury investigation in violation of Rule 6(e), and then brandished the subpoena to pressure the Governor to "support" the Administration's agenda. This is precisely the kind of federal overreach the Constitution forbids, *see R. Enterprises*, 498 U.S. at 299; *see, e.g., Trump v. Vance*, 977 F.3d 198, 206 (2d Cir. 2020) (recognizing as "well established" that a grand jury subpoena may be quashed as "overbroad" or "issued in bad faith"), and, in turn, destroys the presumption of

---

[39]   Stephen   Miller   (@StephenM),   X   (Jan.   18,   2026,   at   9:43   PM   CT), https://x.com/StephenM/status/2013094893397172620?s=20. Miller's post was in response to an X post from New York Post columnist, Miranda Devine, who wrote that: "local cops have gone AWOL" amid ongoing protests. *See also* Jazmin Tolliver, *Stephen Miller Claims Minnesota Authorities Ordered To 'Stand Down And Surrender' Amid Ongoing ICE Protests*, HUFFPOST (Jan. 19, 2026), https://www.huffpost.com/entry/stephen-miller-minnesota-authorities-ordered-stand-down-surrender_n_696e63f0e4b08923e074a92b.

regularity to which grand jury proceedings are typically entitled, *see R. Enterprises*, 498 U.S. at 300–01.

Specifically, the subpoena should be quashed for four independent reasons. First, the subpoena violates fundamental principles of federalism and the anti-commandeering doctrine rooted in the Tenth Amendment. Second, the subpoena is a retaliatory response to Governor Walz's core political speech criticizing the federal immigration agenda and encouraging Minnesotans to engage in lawful, peaceful observation and protest. Third, the subpoena arises from impermissible animus and harassment that is untethered to any legitimate investigation. Fourth, leaks from "U.S. officials" revealing the existence and subject of the grand jury investigation days before service of the subpoena reflect a clear violation of Rule 6(e), confirming the punitive purpose of the subpoena and independently necessitating judicial intervention to protect grand jury secrecy and the integrity of these proceedings. For these reasons, Governor Walz and the Office of the Governor requests that the Court quash the subpoena, issue a protective order barring further efforts to compel testimony or state materials related to immigration enforcement, and order an investigation into the federal government's violations of Rule 6(e).

## A.    Governor Walz Has Standing to Challenge the Subpoena.

The Office of the Governor and Governor Walz, in his personal capacity, move to quash the subpoena issued to the Office of the Governor. Courts have recognized that individuals may have standing to challenge a grand jury subpoena issued to a third party when the individual challenging the grand jury subpoena has "sufficiently important, legally-cognizable interests in the materials or testimony sought . . . ." *E.g., In re Grand*

16

*Jury*, 111 F.3d 1066, 1073 (3d Cir. 1997); *United States v. Brink*, 648 F.2d 1140, 1142–43 n.4 (8th Cir. 1981) (finding that the appellant "may have standing, however, to assert that his right to due process was violated or that the grand jury process was abused"); *see also In re Grand Jury Proceedings*, 208 F.3d 217, 1 (8th Cir. 2000) (unpublished table opinion) (affirming the denial of a grand jury target's motions to intervene and quash a subpoena issued to a third party because the subpoena did not "implicate any of [the target's] claimed rights or privileges").

Governor Walz has a vested interest in the grand jury subpoena addressed to the Office of the Governor. Governor Walz is "the head of the executive department and the chief executive of the state[.]" *Shefa v. Ellison*, 968 N.W.2d 818, 829 n.17 (Minn. 2022) (quoting *State ex rel. Birkeland v. Christianson*, 229 N.W. 313, 314 (Minn. 1930)); *see* Minn. Const. art. V, § 1. The Constitution vests the executive power in a single elected individual, and Minnesota law consistently treats the Office of the Governor as an extension of that individual's constitutional role. *See, e.g.*, Minn. Stat. § 4.01 (stating that the governor is the "custodian of all property of the state not especially entrusted by law to other officers"). Statutes authorizing the Governor to create advisory task forces "in the governor's office" further confirm that the governor's office performs the Governor's work on his behalf. Minn. Stat. § 15.0593. Indeed, Minnesota law draws no clear separation between the elected Governor and the "Office of the Governor" for purposes of custodial responsibility over documents, correspondence, and executive records. As such, Governor Walz has standing to challenge the subpoena issued to the "custodian" of records of his office. *See, e.g., In re Grand Jury*, 111 F.3d at 1073–74; *Schwimmer v. United States*, 232

17

F.2d 855, 860 (8th Cir. 1956) ("[A] motion to quash is entitled to be made by the owner of books and papers, in relation to a grand jury investigation of him, as to a subpoena duces tecum issued against a third party, in whose possession the books and papers are, but who is merely a custodian . . . .").

Further, Governor Walz has standing to challenge the subpoena because the subpoena jeopardizes his First Amendment rights. Unlike the appellant in *In re Grand Jury Proceedings*, who failed to show that the subpoena would "infringe[] on his First Amendment rights," the subpoena here is clearly an attempt by President Trump and the Justice Department to intimidate Governor Walz and chill his protected speech in violation of the First Amendment. *See* 208 F.3d at 1. And although the Government was able to overcome any First Amendment infringement in *In re Grand Jury Proceedings* because it had demonstrated "a compelling interest in and a sufficient nexus between the information sought and the subject matter of its investigation," the same is not true here because the subpoena's demands are not tailored in a way to correspond to the statute allegedly forming the basis of the investigation. *See id.*; 18 U.S.C. § 372; (Subpoena # 2022R00519-A, Ex. A).

Finally, Governor Walz has standing to assert his rights against the federal government's abuse of the grand jury process. In addressing third party standing to assert claims of grand jury abuse, the Third Circuit recognized that standing is determined by "examining the nature of the abuse, and asking whether, and in what manner, it impinges upon the legitimate interests of the party allegedly abused." *In re Grand Jury ("Schmidt")*, 619 F.2d 1022, 1026–27 (3d Cir. 1980) ("More fundamentally, however, we think the

18

government's suggestion that the courts limit standing to claims of abuse of the grand jury process to persons whose property interests or privileges have been invaded is not a viable one. We can imagine cases where neither property interests, nor privileges, have been affected, but other valued rights have."). In *Schmidt*, the court found that, by moving to quash a grand jury subpoena, an employer had standing to make claims that the federal government was not investigating violations of federal law and that prosecutors were attempting to harass the employer. *Id.* at 1027. President Trump and the federal government issued and leaked the subpoena to harass, coerce, and retaliate against Governor Walz for disagreeing with the President's immigration policies. Trump Administration officials have identified Governor Walz as a target of this investigation, with Deputy Attorney General Todd Blanche even labeling Governor Walz as a terrorist.[40] Given grand jury secrecy and the constitutional values at stake, this Court should allow Governor Walz to challenge the federal government's harassing use of the grand jury. *See In re Grand Jury Proceedings*, 814 F.2d 61, 66–67 (1st Cir. 1987) (finding that a defendant being prosecuted in Connecticut had standing to challenge the manner prosecutors were conducting a federal grand jury investigation in Puerto Rico based on the harm to his interests as a criminal defendant "and as a victim of a systematic abuse of the powers of the grand jury").

---

[40] Todd Blanche (@DAGToddBlanche), *supra* note 16. *See also* Donald J. Trump (@realDonaldTrump), *supra* note 17.

19

**B.     The Subpoena Must Be Quashed Because it is Intended to Intimidate Governor Walz in Violation of the Fundamental Principles of Federalism Enshrined in the Constitution.**

The subpoena is intended to intimidate Governor Walz and pressure him to assist with the federal government on immigration enforcement in violation of the anti-commandeering doctrine rooted in the Tenth Amendment. *See* The Federalist No. 46 (James Madison) (advising four primary tactics for individuals and states to effectively push back against federal overreach, including a "refusal to co-operate with the officers of the Union"). Supreme Court precedent on this is clear: "The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz v. United States*, 521 U.S. 898, 935 (1997). In light of these precedents, when the recipient of a subpoena "is a sovereign," the Rule 17 "context" changes. *In re Grand Jury Subpoena for THCF Med. Clinic Recs.*, 504 F. Supp. 2d 1085, 1090 (E.D. Wash. 2007) (granting State of Oregon's motion to quash grand jury subpoena); *In re Grand Jury Subpoena for New York State Income Tax Recs.*, 468 F. Supp. 575, 578 n.2 (N.D.N.Y. 1979) ("Principles of comity and federalism nevertheless dictate that the federal grand jury not be given authorization to run roughshod over the competing state interests . . . ."). Properly understood in this context, the present subpoena is a transparent attempt to coerce state officials in Minnesota into carrying out the Administration's preferred immigration enforcement agenda and must be quashed.

20

If President Trump is to be believed, then—by his own words—immigration is a crisis in the United States.[41]  It is precisely under such circumstances that that anti-commandeering doctrine is at its zenith.  Indeed, as the Supreme Court has described, the doctrine is necessary because "[i]t divides power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day." *New York v. United States*, 505 U.S. 144, 187 (1992).  While the federal government has "the authority under the Constitution to pass laws" regarding immigration, the anti-commandeering doctrine prohibits it from "compel[ling] the States to require or prohibit those acts." *Id.* at 166; *see also City and Cnty. of San Francisco v. Trump*, 779 F. Supp. 3d 1077, 1082 (N.D. Cal. 2025) (holding executive orders freezing funding to so-called sanctuary jurisdictions "violate the Tenth Amendment because they impose coercive condition[s] intended to commandeer local officials into enforcing federal immigration practices and law"), *opinion clarified*, 782 F. Supp. 3d 830 (N.D. Cal. 2025); *United States v. Illinois*, 796 F. Supp. 3d 494, 523 (N.D. Ill. 2025) ("[I]f the State, County, and City cannot control whether and how their employees share information with the federal government, they cannot affirmatively opt-out of enforcing federal immigration laws. This conflicts with the guiding principle of anticommandeering: knowing and voluntary cooperation."); *City of Los Angeles v. Sessions*, No. CV 18-7347-R, 2019 WL 1957966, at *4 (C.D. Cal. Feb. 15, 2019) (requiring

---

[41] *Remarks by President Trump on the Illegal Immigration Crisis and Border Security*, The White House (Nov. 1, 2018), https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-illegal-immigration-crisis-border-security/.

21

state and local law enforcement to partner with federal immigration authorities "upset[s] the constitutional balance between state and federal power," "infringe[s] upon the state police power," and "upset[s] the constitutional balance by requiring state and local participation in a historically federal function—immigration enforcement"). For instance, courts have held that it is a violation of the doctrine for "immigration officials . . . [to] order state and local officials to imprison suspected aliens subject to removal at the request of the federal government." *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014). Similarly, the Ninth Circuit upheld a state law that limited the "discretion" of law enforcement to "cooperate with immigration authorities," finding that "California has the right, pursuant to the anticommandeering rule, to refrain from assisting with federal efforts." *United States v. California*, 921 F.3d 865, 876, 891 (9th Cir. 2019) (citation omitted).

The subpoena commands the testimony and the production of materials relating to federal immigration enforcement in Minnesota, and it follows statements from the Trump Administration to state officials demanding that they assist federal law enforcement and, in some cases, surrender their lawful authority.[42] Indeed, within the span of mere hours on January 24, 2026, Attorney General Bondi (i) sent a letter to Governor Walz demanding state-level policy changes and for the state to help carry out federal program and policy; (ii) went on television to describe the letter as "[w]e said he better support President Trump" and acknowledging there could be consequences based on how Governor Walz

---

[42] *See* Tolliver, *supra* note 25.

22

responds; and (iii) reminded Governor Walz and the public about the instant subpoena.[43] Attorney General Bondi's actions make clear that the subpoena is yet another coercive tactic to pressure the Governor to align with the Administration's agenda, including the Administration's quest to obtain Minnesota's confidential voter rolls. The Tenth Amendment prohibits such intrusion on a state's sovereign powers. *See Illinois*, 796 F. Supp. 3d at 523. To find otherwise with respect to this subpoena would serve as an end run around the Constitution.

C.   **The Subpoena Must Be Quashed Because the Constitution Forbids President Trump and Federal Prosecutors from Using the Grand Jury to Target Governor Walz's Protected Speech.**

At its core, the First Amendment protects political speech. Yet Governor Walz and his office are being targeted for precisely this—"for [their] expression of dissatisfaction with the policies of this country, expression situated at the core of our First Amendment values." *Texas v. Johnson*, 491 U.S. 397, 411 (1989). The "law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation omitted). That is why "grand juries must operate within the limits of the First Amendment." *Branzburg v. Hayes*, 408 U.S. 665, 708 (1972). Indeed, the subpoenas that grand juries issue "are in fact almost universally

---

[43] Jasmine Baehr, *READ IT: Bondi sends letter to Gov Walz warning Minnesota's immigration policies endanger agents*, Fox News (Jan. 24, 2026), https://www.foxnews.com/politics/read-it-bondi-sends-warning-letter-gov-walz-warning-minnesotas-immigration-policies-endanger-agents; Eric Daugherty (@EricLDaugh), *supra* note 35; Attorney General Pamela Bondi (@AGPamBondi), *supra* note 38.

instrumentalities" of the federal government. *See In re Grand Jury Proceedings*, 486 F.2d at 90.

"If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman*, 547 U.S. at 256). A retaliation claim is established through three elements: "(1) the plaintiff engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 859–60 (8th Cir. 2024) (citation omitted). The firmness test is an objective one, "designed to weed out trivial matters from substantial violations of the First Amendment." *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (citation omitted). Threating the sitting Governor of a sovereign state with criminal prosecution because of political speech certainly satisfies that test.

### 1.    Governor Walz engaged in constitutionally protected speech.

Governor Walz has routinely criticized President Trump and his policies. He believes that the federal government is engaging in actions that are incompatible with the interests and values of the people of Minnesota. In expressing his belief, Governor Walz has encouraged the public to peacefully exercise their First Amendment rights by peacefully protesting and observing federal law enforcement actions. These are activities the Eighth Circuit has already declared to be lawful, *see, e.g., Ness v. City of Bloomington*,

11 F.4th 914, 923 (8th Cir. 2021) ("The acts of taking photographs and recording videos are entitled to First Amendment protection because they are an important stage of the speech process that ends with the dissemination of information about a public controversy."), along with many other circuits, *see, e.g., Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017); *Gericke v. Begin*, 753 F.3d 1, 7–8 (1st Cir. 2014); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595–96 (7th Cir. 2012); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018); *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022). Governor Walz has not encouraged obstruction of federal investigations or violence against federal officers.

## 2.    The threat of criminal prosecution undoubtedly chills a person from exercising their right to free speech.

The Eighth Circuit previously concluded that a Mayor's retaliatory issuance of parking tickets to a business owner for her complaints to the Mayor would chill the speech of a person of ordinary firmness. *See Garcia v. City of Trenton,* 348 F.3d 726, 728–29 (8th Cir. 2003). The threat of criminal prosecution and imprisonment by the President of the United States—as evidenced by this subpoena—is a far greater risk. *See also Multimedia Holdings Corp. v. Cir. Ct. of Fla., St. Johns Cnty.*, 544 U.S. 1301, 1304 (2005) ("A threat of prosecution or criminal contempt against a specific publication raises special First Amendment concerns, for it may chill protected speech much like an injunction against speech by putting that party at an added risk of liability."); *Rinne v. Camden Cnty.*, 65 F.4th 378, 383–84 (8th Cir. 2023) (finding that the County commission's ban prohibiting a

resident from entering county property for one year was adverse action despite not actually prosecuting the resident for violating the ban). Therefore, under Eighth Circuit precedent, the subpoena chills the speech of a person of ordinary firmness.

### 3. President Trump and the Justice Department seek to use the grand jury to intimidate Governor Walz and chill his protected speech.

President Trump's Deputy Attorney General told Fox News that Governor Walz's anti-ICE rhetoric was teetering on a federal crime.[44] Notably, Justice officials never explain how Governor Walz is "teetering" on a federal crime, other than by not supporting the Trump Administration – which of course is not a crime. Nor is it common of federal prosecutor to promote a criminal investigation on Sunday morning talk shows. Instead, by leaking the investigation and subpoena to the public, the Department of Justice sought to exploit *the threat of criminal prosecution* for its own political purposes.

The President's documented animus, driven by Governor Walz's exercise of his First Amendment rights and his encouragement for Minnesotans to do the same, underlies this effort to subject Governor Walz to the criminal justice system. *See Nieves*, 587 U.S. at 399 (noting that to prevail on a First Amendment claim, "the adverse action against the plaintiff would not have been taken absent the retaliatory motive"). By telling Fox News that Governor Walz's anti-ICE rhetoric was teetering on a federal crime, Deputy Attorney

---

[44] Greg Norman-Diamond & Alexis McAdams, *DOJ serves grand jury subpoenas to Minnesota Dems in investigation of ICE obstruction: sources*, FOX NEWS (Jan. 20, 2026) ("When the governor or the mayor threaten our officers, when the mayor suggests that he's encouraging citizens to call 911 when they see ICE officers, that is very close to a federal crime."), https://www.foxnews.com/politics/doj-serves-grand-jury-subpoenas-minnesota-dems-investigation-ice-obstruction-sources.

General Blanche establishes that the subpoena would not have been issued but for Governor Walz's speech.

Although retaliatory prosecution claims require a different showing of causation from ordinary retaliation claims, here President Trump and the Department of Justice share a retaliatory motive. *See Scott v. Tempelmeyer*, 867 F.3d 1067, 1071 (8th Cir. 2017) (noting that "where the causal connection required was 'between the retaliatory animus of one person and the action of another,'" the plaintiff must show an absence of probable cause for the prosecution or regulatory enforcement action "to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action." (quoting *Hartman*, 547 U.S. at 262–63)). President Trump has directed the Justice Department to target those who he perceives as enemies.[45]   As the Department of Justice has acknowledged that it follows the President's directives to target his perceived enemies, President Trump and the Department of Justice share a retaliatory motive.  Given the news articles and public statements by President Trump and Department of Justice officials, any argument that the Department of Justice issued the subpoena to fulfill official duties and not out of retaliatory animus falls short.

In *Mohammed H. v. Trump*, this Court recognized a causal connection between retaliatory motive and adverse action based on evidence that the Trump administration

---

[45] Josh Meyer, *First Comey, then James, now John Bolton.  Here's who is next on Trump's legal hit list*, USA TODAY (Oct. 17, 2025), https://www.usatoday.com/story/news/politics/2025/10/08/trump-comey-bolton-james-retribution-justice-department/86584843007/; Malcolm Ferguson, *Trump Makes Clear No One Can Rule Against Him as He Threatens Enemies*, THE NEW REPUBLIC (Oct. 15, 2025), https://newrepublic.com/post/201828/trump-chief-law-enforcement-officer-threatens-enemies.

27

publicly stated its disfavor for international students who express support for Palestine or criticize Israel. 786 F. Supp. 3d 1149, 1155–56 (D. Minn. 2025), *appeal docketed* No. 25-2516 (8th Cir. 2025). This Court found that executive agencies acted in accordance with the Trump administration objectives by arresting, detaining, and pursuing removal of an international student who expressed support for Palestine. *Id.* at 1156. "[T]iming, context, and the Government's own public statements" established that a non-citizen student was arrested and detained because he expressed pro-Palestinian views and criticized violence in Gaza. *Id.* at 1157. The timing, context, and federal government's own public statements here similarly establish, as Deputy Attorney General Blanche himself noted, that the target of the investigation and subpoena at issue is constitutionally protected speech.

### 4.    The federal government cannot justify the subpoena's intrusion on Governor Walz's protected First Amendment activity.

For a court to enforce a subpoena over a First Amendment challenge, the government must demonstrate a compelling interest in and sufficient nexus between the information sought and the subject of its investigation. *In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d 1307, 1312 (8th Cir. 1996). The federal government fails to satisfy its burden.

First, the federal government has not made the required showing of a compelling interest. Instead, the evidence shows that the federal government has issued the subpoena out of bad faith and animus towards Governor Walz. Second, even assuming the federal government's investigation of Governor Walz is valid, the federal government does not have an "an unlimited right of access to [private parties'] papers with reference to the

28

possible existence of [illegal] practices." *In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1297 (4th Cir. 1987) (alteration in original) (quoting *Fed. Trade Comm'n v. Am. Tobacco Co.*, 264 U.S. 298, 305 (1924)). The federal government must show there is a sufficient nexus between the information sought and the subject of its investigation. *In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d at 1312. Here, the subpoena reflects the inflammatory accusations made by members of the Trump Administration that Governor Walz is not cooperating with federal immigration enforcement efforts in Minnesota. The categories of documents sought in the subpoena are not relevant to any conceivable or enforceable criminal statute. Rather, the subpoena seeks to intimidate a sitting state Governor into mobilizing the state government for the purposes of executing federal law enforcement and chill the sitting Governor's free speech.

### D. The Subpoena Must Be Quashed Because President Trump Directed the Justice Department to Investigate Governor Walz and Is Using the Grand Jury Subpoena to Harass His Perceived Political Adversaries.

Since the start of his second term, President Trump, who regularly states that he is the "chief law enforcement officer" of the United States, has directed the Justice Department to target those who he perceives as enemies.[46] For its part, the Department of Justice has acknowledged that it follows the President's directives to target his perceived enemies despite there being no evidence of them committing crimes. In a memorandum

---

[46] Brett Samuels, *Trump responds to Bolton raid: 'He could be a very unpatriotic guy'*, THE HILL (Aug. 22, 2025) ("I tell [Attorney General Bondi], and I tell the group, I don't want to know, but you have to do what you have to do. I don't want to know about it. . .it's not necessary. I could know about. I could be the one starting it. I'm actually the chief law enforcement officer." (alteration in original)), https://thehill.com/homenews/administration/5465543-donald-trump-john-bolton-fbi-raid/; Josh Meyer, *supra* note 45; Ferguson, *supra* note 45.

she issued within hours of being sworn in, Attorney General Bondi warned the Justice Department that refusing to advance legal arguments they disagree with "deprives the President of the benefit of *his* lawyers" and that any attorney who does so "will be subject to discipline and potentially termination . . . ."[47] Indeed, career prosecutors who have resisted the President's demands—upholding their oath to the country—have been fired.[48] Here, the sequence of directives, threats, and public statements—coupled with the timing of the subpoena—demonstrate that the Administration is not using the grand jury process to gather evidence for a legitimate criminal inquiry, but instead to punish perceived political rivals and to compel state cooperation with President Trump's agenda.

        **1.**       **President Trump has a history of using the grand jury process and the criminal justice system to target his enemies.**

Notably, President Trump publicly posted a statement on social media explicitly pressing the Attorney General to prosecute former FBI Director James Comey and New York State Attorney General James, stating: "They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT."[49]

---

[47] Memorandum from Pamela J. Bondi, Att'y Gen., to Dep't of Just. Emps. on General Policy Regarding Zealous Advocacy on Behalf of the United States (Feb. 5, 2025) (emphasis added).

[48] *See* Alan Feuer, *Prosecutor Who Rejected Trump's Pressure to Charge James Is Fired*, N.Y. TIMES (Oct. 17, 2025), https://www.nytimes.com/2025/10/17/us/politics/trump-prosecutor-fired-letitia-james.html.

[49] Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, 5:44 PM CT), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.

Within thirty days of the President's post, the Justice Department sought and obtained indictments against Comey and James.[50]

More recently, the President has used the criminal justice system to target political enemies with whom he has policy differences with, including members of the Federal Reserve Board. The President has deep animus towards Chair Jerome Powell, saying publicly that Powell has "mental problems" and that he would love to "fire his ass," because of the Federal Reserve's refusal to heed the President's demand to lower interest rates.[51] Because of the statutory challenges rendering dismissal difficult,[52] the Justice Department is using the criminal justice system to intimidate Powell.[53]

---

[50] *See* Dareh Gregorian et al., *Judge Dismisses Cases Against James Comey and Letitia James After Finding Prosecutor was Unlawfully Appointed*, NBC NEWS (Nov. 24, 2025), https://www.nbcnews.com/politics/justice-department/judge-dismisses-cases-james-comey-letitia-james-finding-prosecutor-was-rcna244775. The Northern District of New York recently quashed another politically-motivated grand jury subpoena to the New York State Attorney General's Office as "unreasonable" under Rule 17. *In re Grand Jury Subpoenas*, 2026 WL 60793, at *10. In addition to a procedural defect, the court emphasized that the government had used its "authority to subpoena a state law-enforcement office that the President had publicly cast as a political adversary," and also explained that the grand jury subpoena power had been "leverage[d] . . . against a perceived rival of the President." *Id.* at *11.

[51] *See, e.g.*, Louis Casiano, *Trump Slams Fed Chair Jerome Powell, Says he has 'Mental Problems' and Should be Fired*, FOX BUSINESS (Nov. 20, 2025), https://www.foxbusiness.com/politics/trump-slams-fed-chair-jerome-powell-says-mental-problems-fired.

[52] *See* Victoria Guida, *Supreme Court Signals Trump Can't Fire Fed Chair Powell*, POLITICO (May 22, 2025), https://www.politico.com/news/2025/05/22/supreme-court-fed-powell-trump-00366526.

[53] *See* Balazs Koranyi & Manya Saini, *Central bank chiefs, bank CEOs back Fed's Powell after Trump administration threat,* REUTERS (Jan. 13, 2026), https://www.reuters.com/business/global-central-bank-chiefs-plan-statement-support-feds-powell-2026-01-13/.

31

2.      **The Grand Jury Subpoena is Intended to Harass Governor Walz.**

The instant subpoena against Governor Walz's office reflects yet another attempt by President Trump to use the Justice Department to intimidate, harass, and seek retribution against his political enemies.  Indeed, Governor Walz's speech, along with his affiliation with the Democratic Party, makes him an enemy of the President.  The President himself has stated: "I hate my opponent . . . and I don't want the best for them."[54]  He is using the federal government against the Governor in the same way that he has "attacked law firms, universities, political leaders, government agencies, late-night TV hosts, news organizations and cultural institutions."[55]  Indeed, the President believes that "[w]e have radical-left lunatics out there, and we just have to beat the hell out of them."[56]  For President Trump, the criminal justice system is the way to do that.

Taken together, this Court must consider President Trump's statements and actions, in addition to those of federal officials, in considering this motion.  Indeed, courts have considered the animus of both prosecutors and non-prosecutors in related contexts.  *See, e.g., United States v. Sanders*, 211 F.3d 711, 716–17 (2d Cir. 2000) (observing that a prosecutor acts with vindictive motive not only when she harbors "genuine animus" but also under circumstances when she "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse.'" (quoting

---

[54] Tyler Pager, *'I Hate My Opponent': Trump's Remarks at Kirk Memorial Distill His Politics*, N.Y. TIMES (Sep. 22, 2025), https://www.nytimes.com/2025/09/22/us/politics/trump-kirk-memorial-hate.html.

[55] *Id.*

[56] *Id.*

*United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)). President Trump and his personal vendetta is the cause of the Department of Justice decision to issue the subpoena, and the record leaves no doubt that this subpoena is a direct product of that effort.

### E.     The Subpoena Must Be Quashed Because It Seeks Information Irrelevant to any Legitimate Grand Jury Investigation.

A grand jury's subpoena power is constrained by the requirement that "the category of materials the Government seeks . . . [must] produce information relevant to the general subject of the grand jury's investigation." *R. Enterprises*, 498 U.S. at 301. While "[s]ome exploration or fishing necessarily is inherent and entitled to exist in all documentary productions sought by a grand jury," *Schwimmer*, 232 F.2d at 862–63, a subpoena that is a "pure total fishing expedition" is impermissible. *United States v. Hang*, 75 F.3d 1275, 1283–84 (8th Cir. 1996); *see also United States v. Nixon*, 418 U.S. 683, 700 (noting that an application cannot be "intended as a general 'fishing expedition.'"). Thus, when a subpoena is "issue[d] based upon a party's 'mere hope' that it will turn up favorable evidence," it must be quashed. *United States v. Stevenson*, 727 F.3d 826, 831 (8th Cir. 2013) (quoting *Hang*, 75 F.3d at 1283).

The subpoena's demands for information make clear that the federal government is engaged in an impermissible fishing expedition rather than a legitimate investigation. As a threshold matter, the federal government has yet to articulate a clear theory of criminal liability as it relates to Governor Walz, despite repeated attempts by Governor Walz's counsel to discuss the investigation with the U.S. Attorney's Office. But even if reporting is to be believed that the investigation is based on allegations that Governor Walz conspired

33

"to prevent, by force, intimidation, or threat" federal immigration officers from discharging their duties, 18 U.S.C. § 372,[57] the subpoena's requests are still irrelevant because the federal government lacks a good-faith basis to believe that Governor Walz has committed such a crime. In fact, Governor Walz has repeatedly encouraged Minnesotans to peacefully exercise their First Amendment rights, including the First Amendment protected activity of observing law enforcement. *See, e.g., Ness,* 11 F.4th at 923 ("The acts of taking photographs and recording videos are entitled to First Amendment protection because they are an important stage of the speech process that ends with the dissemination of information about a public controversy."). Public reporting reflects, Governor Walz has also communicated with both President Trump and Border Czar Tom Homan regarding how best to deescalate the ongoing situation in Minnesota. *See, e.g.,* Anushka Patil, et al., *"Minnesota Leaders Meet With White House Border Czar,"* NYTimes (Jan. 27, 2026), https://www.nytimes.com/2026/01/27/us/minneapolis-walz-frey-homan-ice.html

Further, the subpoena's demands are not narrowed in a way to align with a key element of the statute allegedly forming the basis of the investigation: "force, intimidation, or threat." *See* 18 U.S.C. § 372. For instance, the first request covers "[a]ll written records . . . issued by the Office of the Governor of the State of Minnesota, since January 1, 2025, relating to federal immigration enforcement in the State of Minnesota." (Subpoena # 2022R00519-A, Ex. A.) This overbroad request would sweep in records wholly irrelevant

---

[57] *See* Camilo Montoya-Galvez & Sarah N. Lynch, *DOJ subpoenas Walz, Ellison, Grey, Minnesota officials in probe alleging immigration obstruction, sources say,* CBS NEWS (Jan. 20, 2026), https://www.cbsnews.com/news/subpoena-tim-walz-keith-ellison-jacob-frey-immigration-obstruction/.

to the alleged crime that the federal government is purported to be investigating. These circumstances demonstrate that this subpoena was issued based on a "'mere hope' that it will turn up" evidence against Governor Walz, an endeavor that goes beyond the lawful function of a grand jury subpoena. *See Stevenson*, 727 F.3d at 831.

**F.      The Court Should Conduct an Investigation into the Government's Rule 6(e) Violations.**

The Trump Administration's bold violations of grand jury secrecy are yet more evidence of the retaliatory and punitive intent of the subpoena. On top of underscoring the need to quash the subpoena, the Administration's Rule 6(e) violations warrant investigation by the Court.

The Supreme Court has "consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979) (citation omitted); *In re Grand Jury Subpoenas Dated Feb. 28, 2002, Mar. 26, 2003, Oct. 4, 2004*, 472 F.3d 990, 995 (8th Cir. 2007); *In re Blue Grand Jury*, 536 F. Supp. 3d 435, 436 (D. Minn. 2021). Rule 6(e) of the Federal Rules of Criminal Procedure prohibits attorneys for the federal government, among other persons, from disclosing any "matters occurring before the grand jury," *Douglas*, 441 U.S. at 218 n.9; Fed. R. Crim. P. 6(e)(2); *see also In re Blue Grand Jury*, 536 F. Supp. 3d at 436, including the issuance of a grand jury subpoena. *E.g.*, Fed. R. Crim. P. 6(e)(6) ("Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."); *United States v. Flemmi*, 233 F. Supp. 2d 75, 81

35

(D. Mass. 2000) ("The issuance of a grand jury subpoena is a matter governed by Rule 6(e).").

A *prima facie* case of a violation of Rule 6(e)(2) is made "when the media reports disclosed information about matters occurring before the grand jury and indicated that the sources of the information included attorneys and agents of the Government." *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989) (citation and internal quotations omitted). This court has previously considered leaks to the media of this kind, at a minimum, to provide reason to believe the federal government violated Rule 6(e). *See, e.g., In re Blue Grand Jury*, 536 F. Supp. 3d at 436–37 ("On February 23, 2021, the *New York Times* published an article headlined 'With New Grand Jury, Justice Department Revives Investigation Into Death of George Floyd.' On April 29, 2021, the (Minneapolis) *Star Tribune* published an article headlined 'Feds plan to indict Chauvin, other three ex-officers on civil rights charges.' Both articles provide reason to believe that 'matter[s] occurring before the grand jury' were disclosed to reporters in violation of Fed. R. Crim. P. 6(e)." (alteration and emphasis in original)).

Details related to the grand jury's investigation into Governor Walz, including the issuance of a subpoena, were leaked to news outlets at least four days before the instant subpoena was served on January 20, 2026. Multiple outlets, including the *Washington Post* and CBS News, specifically credited the revelation to anonymous "U.S. officials."[58] And, some of these anonymous individuals even acknowledged that "they were not

---

[58] *See* Perry Stein, *supra* note 24; Camilo Montoya-Galvez et al., *supra* note 25.

authorized to discuss a pending investigation by name."[59] Multiple outlets confirmed their sources were U.S. officials, and the Governor did not receive the subpoena until after the leaks.

The very day that the *Washington Post* and CBS News reported about the subpoena based on information received from "U.S. officials," Attorney General Bondi posted on X: "A reminder to all those in Minnesota: No one is above the law."[60] Seeking to exploit the leak to harass Governor Walz, Deputy Attorney General Blanche said the following two days later: "Under federal law, you cannot impede a federal officer from doing their job. So, that's what we're looking at . . . ."[61]

Here, Deputy Attorney General Blanche exposes the purpose of the leak, the investigation, and the grand jury subpoena—to harass the President's perceived political opponent and use the criminal process to coerce Governor Walz to coordinate on the President's immigration agenda, one of the President's signature policies. This is emblematic of the President's typical playbook when using the power of the Justice Department against his political foes: criticize them in public, and when they do not fold, investigate and prosecute them. This subpoena puts Governor Walz in the company of Federal Reserve Chair Jerome Powell, who became the subject of a grand jury investigation after he refused to comply with the President's demands to lower interest rates, in addition

---

[59] *See, e.g.*, Alanna Durkin Richer et al., *supra* note 26.

[60] Attorney General Pamela Bondi (@AGPamBondi), *supra* note 30.

[61] *Deputy AG calls out Dem's 'complete lie' about ICE Agents amid Minneapolis protests*, *supra* note 32.

to many other perceived adversaries of President Trump who have been targets of the Trump Department of Justice. This is not a legitimate basis to initiate a grand jury investigation.

For the foregoing reasons, the Court is empowered to, at the very least, order an investigation into the Rule 6(e) violations that have occurred here. *E.g.*, *In re Blue Grand Jury*, 536 F. Supp. 3d at 437.

## V.   CONCLUSION

The grand jury subpoena directed to the Office of the Governor cannot be reconciled with either the Constitution or the legitimate uses of the grand jury process. The record demonstrates that the subpoena is the latest step in a campaign to coerce a sovereign state into advancing the political agenda of the federal government, to punish a political opponent for protected speech, and to chill ongoing expression and advocacy on matters of profound public concern. These constitutional defects are compounded by the federal government's apparent Rule 6(e) violations, which confirm the punitive purpose of the subpoena and undermine the integrity of the grand jury process. The Constitution does not permit the federal government to do indirectly—by threat of criminal process—what it cannot do directly. The subpoena should be quashed and appropriate remedial measures imposed to prevent further misuse of the grand jury.

Further, the Court should conduct an investigation into the federal government's Rule 6(e) breaches. At a minimum, the Court should hold an evidentiary hearing and require the federal government to show cause as to its apparent violations of Rule 6(e).

38

Dated: February 2, 2026

| | |
|---|---|
| FREDRIKSON & BYRON, P.A.<br><br>s/ *Joseph Dixon*<br>Joseph T. Dixon (#0283903)<br>Manda M. Sertich (#0504328)<br>Amanda M. Mills (#0397685)<br>Erik E. Money (#0401757)<br>Megan M. Helstrom (#0403441)<br>**FREDRIKSON & BYRON, P.A.**<br>60 South Sixth Street<br>Suite 1500<br>Minneapolis, MN 55402-4400<br>(612) 492-7000<br>jdixon@fredlaw.com<br>msertich@fredlaw.com<br>amills@fredlaw.com<br>emoney@fredlaw.com<br>mhelstrom@fredlaw.com<br><br>Attorneys for Governor Tim Walz | OFFICE OF THE ATTORNEY GENERAL<br><br>s/     Liz Kramer<br><br>Liz Kramer, Reg. No. 0325089<br>Solicitor General<br>445 Minnesota Street, Suite 600<br>St. Paul, Minnesota 55101-2131<br>(651) 757-1010 (Voice)<br>(651) 282-5832 (Fax)<br>liz.kramer@ag.state.mn.us<br><br><br>Attorney for the Office of the Governor of Minnesota |