IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| IN RE GRAND JURY SUBPOENA<br>Subpoena #2022R00519-A | : | Case Number: ███████ |
|  | : | **FILED UNDER SEAL** |

## REPLY IN SUPPORT OF MOTION TO QUASH GRAND JURY SUBPOENA

RECEIVED

MAR 1 6 2026

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

As its core argument, the federal government invites the Court to apply the presumption of regularity typically afforded to grand jury subpoenas while ignoring the highly irregular context in which the instant subpoena was issued. The federal government cannot benefit from the hard-earned credibility typically enjoyed by federal prosecutors where the presumption of regularity has been eviscerated as it has been in this case, and with the subpoena seeking to advance improper and unconstitutional aims—and issued only following impermissible media leaks.

While grand juries possess broad investigative powers, those powers are "not unlimited." *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991). The presumption of regularity cannot and should not insulate a subpoena issued for an improper purpose under an irregular process, nor can or should it excuse conduct that plainly violates the First and Tenth Amendments by intruding on state sovereignty and constitutionally protected political speech. *See id.* at 297, 300–01.

Beyond entirely ignoring Governor Walz's leading argument—that the subpoena improperly intrudes on independent state powers in violation of the Tenth Amendment—the federal government relies on cases that provide little to no support for its extraordinary actions. The federal government also fails to offer any evidence or explanation for a grand jury investigation of a sitting state governor and his office. Thus, there is no good-faith basis to believe that the subpoena is intended to obtain evidence of potential criminal misconduct.

1

Although quashing a grand jury subpoena is reserved for only the most exceptional circumstances, the circumstances here—the intrusion on constitutional interests, as well as apparent violations of federal grand jury secrecy rules—compel that extraordinary relief. *See, e.g., id.*; *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985); *In re Grand Jury Proceedings*, 486 F.2d 85, 91 (3d Cir. 1973). The subpoena should be quashed.

I. **ARGUMENT**

A. **The presumption of regularity is not absolute and cannot excuse the federal government's demonstrable abuse of the grand jury process.**

While grand jury proceedings are entitled to "a *presumption* of regularity," that presumption can be overcome by a showing that "an irregularity exists." *Universal Mfg. Co. v. United States*, 508 F.2d 684, 685 (8th Cir. 1975) (emphasis added). Though this is a "heavy burden," it is rebutted in circumstances such as these. *See United States v. Kouba*, 822 F.2d 768, 774 (8th Cir. 1987) (quoting *United States v. Hintzman*, 806 F.2d 840, 843 (8th Cir. 1986)) (internal quotations omitted).

In its response, the federal government notes that "[c]ontext matters." *See* Gov't's Resp. at 9. Governor Walz and his office agree. Placed in proper context, the processes that led to the issuance of the instant subpoena were anything but regular. As noted in Governor Walz's opening brief, the Department of Justice had already demonstrated a willingness to use criminal investigations to punish and intimidate political opponents. Locally, public reporting reveals concerns raised by career prosecutors at the office that issued the subpoena regarding politically charged directives from political appointees at

2

the Department of Justice, and also describes the office as "melting down."[1]  In the year since President Trump took office, nearly half of the attorneys in the U.S. Attorney's Office for the District of Minnesota have left, citing concerns about ethics and political pressure as two of the main reasons for their departures.[2]

In addition, in recent months, the office has repeatedly refused to comply with duly issued judicial orders in recent weeks, with multiple judges sanctioning prosecutors appearing on behalf of the office.[3]  Moreover, the office has also recently demonstrated a pattern of initiating criminal charges, publicly touting those charges, and then quickly dismissing the charges when required to produce evidence of wrongdoing or present the charges to the grand jury.[4]  These developments make clear that the U.S. Attorney's Office is not presently operating "with regularity" or in good faith.

---

[1] *See* Jeffrey Meitrodt & Sarah Nelson, *Inside the upheaval at the Minnesota U.S. Attorney's Office*, The Minnesota Star Tribune (Feb. 27, 2026), https://www.startribune.com/inside-the-upheaval-at-the-minnesota-us-attorneys-office/601580377/.

[2] *Id.*

[3] Jacob Rosen & Joe Walsh, *Minnesota judge holds lawyers for DOJ in contempt as tensions flare over immigration cases*, CBS News (Feb. 20, 2026), https://www.cbsnews.com/news/minnesota-judge-holds-lawyer-for-doj-in-contempt-as-tensions-flare-over-immigration-cases/.

[4] Susan Du, *Charges Dropped Against 3 Minnesotans Accused of Assaulting Federal Agents*, Union-Bulletin (Feb. 25, 2026), https://www.union-bulletin.com/news/national/charges-dropped-against-3-minnesotans-accused-of-assaulting-federal-agents/article_be8958a3-d12a-56fd-aad9-35503e3aacd7.html (describing charges being dismissed against one defendant "without providing a reason and without producing evidence to justify the accusations against her"); *Prosecutors to Dismiss Charges Against Men Accused of Assaulting ICE Officer in Minneapolis*, PBS NewsHour (Feb. 13, 2026), https://www.pbs.org/newshour/politics/prosecutors-to-dismiss-charges-against-men-accused-of-assaulting-ice-officer-in-minneapolis (describing U.S. Attorney's Office's admission that the "evidence" in criminal case was "materially inconsistent with the allegations against them"); *United States v. Catlett*, Case No. 0:26-mj-00102-DJF, Dkt. No. 7 (D. Minn. Feb. 6, 2026) (granting United States' motion to dismiss); *United States v. Espinoza-Espinoza*, Case (continued...)

Indeed, in another recent case in which the President pressured the Department of Justice to investigate his political enemies, the court quashed two subpoenas after finding that "the subpoenas' dominant (if not sole) purpose is to harass and pressure [Chair of the Federal Reserve Jerome] Powell either to yield to the President or to resign and make way for a Fed Chair who will." *See Bd. of Governors of the Fed. Reserve Sys. v. United States*, Case No. 26-12, Dkt. No. 23 (D.D.C. Mar. 11, 2026). Similarly here, the public record establishes this subpoena is part of an effort to criminalize and publicize a political dispute between the President of the United States and the Governor of Minnesota, and an improper attempt by the former to intimidate the latter into capitulating. The Trump administration's public statements have explicitly linked the present investigation to Governor Walz's public refusal to carry out the administration's preferred immigration agenda. For example, according to a U.S. official, the federal government began investigating Governor Walz "because of the statements made by Frey and Walz about the federal immigration operations happening in the city and state."[5]

Such improper motives cannot serve as the basis for a grand jury investigation, and the federal government should not benefit from a presumption of regularity. The federal

---

No. 0:26-mj-00030-LIB, Dkt. No. 10 (D. Minn. Jan. 26, 2026) ("The Government did not present any witnesses to meet its burden of establishing that the Complaint is supported by probable cause, and instead the Government moved to dismiss the Complaint.").

[5] Gabrielle Canon et al., *Judge issues injunction to curb federal agents' tactics against protesters in Minnesota – as it happened*, The Guardian (Jan. 16, 2026), https://www.theguardian.com/us-news/live/2026/jan/16/donald-trump-minnesota-ice-us-politics-live-latest-news.

government's failure to offer any explanation regarding its subpoena issued to a sitting governor only confirms this conclusion.

## B. The federal government fails to address the subpoena's violation of the Tenth Amendment.

Through the subpoena, the federal government seeks to do what the Tenth Amendment prohibits: "issu[ing] directives requiring the States to address particular problems" and "command[ing] the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz v. United States*, 521 U.S. 898, 935 (1997). Courts have recognized that the risk of federal commandeering is heightened with respect to immigration enforcement and have routinely upheld the Tenth Amendment's core guarantee of state sovereignty in this context. *See, e.g.*, *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018); *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014). The federal government is disregarding established precedent by abusing the grand jury process and the criminal justice system to pressure Governor Walz and other officials to acquiesce to its political agenda.[6]

---

[6] *See* Jazmin Tolliver, *Stephen Miller Claims Minnesota Authorities Ordered To 'Stand Down And Surrender' Amid Ongoing ICE Protests*, HuffPost (Jan. 19, 2026), https://www.huffpost.com/entry/stephen-miller-minnesota-authorities-ordered-stand-down-surrender_n_696e63f0e4b08923e074a92b; Eric Daugherty (@EricLDaugh), X (Jan. 24, 2026, at 2:27 PM), https://x.com/EricLDaugh/status/2015144339450495457?s=20; Attorney General Pamela Bondi. (@AGPamBondi), X (Jan. 24, 2026, at 9:07 PM), https://x.com/AGPamBondi/status/2015245175644168618?s=20.

In asking the Court to simply rely on the presumption of regularity to enforce the subpoena, the federal government sidesteps the constitutional principles that underlie our federalist system of government and proposes to create an impermissible loophole in our Constitution. The federal government fails to even acknowledge—let alone rebut—the argument that the subpoena violates the anti-commandeering doctrine rooted in the Tenth Amendment. That non-response should be construed as a waiver. *See, e.g., Doll v. Trellis Walnut Towers LLC*, No. 24-cv-136 (ECT/TNL), 2024 U.S. Dist. LEXIS 176750, at *7 (D. Minn. Sep. 30, 2024) ("A litigant's complete failure to respond to an opposing party's argument is often construed as a waiver."); *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014) (noting that failures to respond to an opposing party's argument or motion means to waive or abandon those claims). The subpoena should be quashed as an unlawful intrusion into state sovereignty and the independent powers reserved to the States by the Constitution.

**C.** **The federal government has failed to sustain its burden of demonstrating a compelling governmental interest justifying infringement on Governor Walz's free speech rights.**

Attempting to justify its effort to punish Governor Walz for voicing opposition to Operation Metro Surge, the federal government relies on the incorrect legal standard for overcoming a First Amendment challenge to a subpoena and fails even to meet the less demanding standard it sets for itself. Gov't's Resp. at 3-4. In describing the requisite burden to overcome a First Amendment challenge to a grand jury subpoena, the federal government contends that it "need only establish 'a sufficient nexus between the

information sought and the subject matter of the investigation.'" *Id.* (alteration in original) (quoting *In re Faltico*, 561 F.2d 109, 111 (8th Cir. 1977)). The Eighth Circuit has made clear, however, that the federal government must "show[] a compelling state interest in the subject matter of the investigation *and* a sufficient nexus between the information sought and the subject matter of the investigation." *See In re Faltico*, 561 F.2d at 111 (emphasis added); *In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d 1307, 1312 (8th Cir. 1996).

Under either the proper standard or the federal government's truncated standard, the present subpoena falls short. The federal government largely sidesteps the first prong of the test by asserting—without analysis—that it "has an obvious compelling interest," while failing to identify any compelling interest in investigating the conduct or alleged noncompliance of the relevant state entities themselves. Just as the subpoena does not deserve any presumption of regularity, the federal government cannot presume that federal agents are engaging in lawful activity or that peaceful protest and public opposition to the administration's policies constitute a crime. Indeed, the federal government provides no meaningful context from which to assess whether the training, policies, or procedures of the state entities are even arguably improper. Critically, the federal government articulates no interest at all in the conduct of Governor Walz's office as it relates to that office's training, policies, or procedures. In these circumstances, the federal government cannot simply presume a compelling interest where none has been identified.

Even had the federal government articulated an "obvious compelling interest," which it has not, the federal government has made no effort to demonstrate any nexus

7

between that interest and the evidence that the subpoena would compel the Governor's Office to provide. Gov't's Resp. at 4. The case at hand can be distinguished from *In re Faltico*, where the district court denied a motion to quash following an evidentiary hearing and where the requested information was directly related to the investigation into alleged violations of 18 U.S.C. § 1962. 561 F.2d at 110–11. Here, there has been no evidentiary hearing, and the federal government has yet to articulate any viable theory of criminal liability as it relates to Governor Walz or anyone in his office. In its response, the federal government provides only six examples of local officials allegedly "interfering" with federal law enforcement. Notably, not a single example involves Governor Walz or the Office of the Governor. Other than acknowledging in its first sentence that Governor Walz filed a motion to quash, the federal government's response does not even mention him or his office.

Just last week, when faced with a similar lack of credible evidence to support an overtly politically-motivated Department of Justice investigation, the U.S. District Court for the District of Columbia quashed subpoenas targeting Federal Reserve Chair Jerome Powell. In so doing, the court concluded that the federal government's purported justifications for issuing the subpoenas were "so thin and unsubstantiated that the Court can only conclude that they are pretextual." *Bd. of Governors of the Fed. Reserve Sys. v. United States*, Case No. 26-12, Dkt. No. 23 (D.D.C. Mar. 11, 2026). The facts are even starker here where the federal government has failed to offer any nexus between its

8

subpoena and its asserted investigative aims.  Therefore, its infringement of Governor Walz's First Amendment rights cannot be sustained.

**D.      The evidence warrants an investigation into potential violations of Rule 6(e).**

The public record establishes that the federal government has violated Rule 6(e).  *In re Sealed Case*, which the federal government cites, stands for the proposition that a *prima facie* showing of a Rule 6(e) violation triggers an evidentiary hearing, 250 F.3d 764, 770 (D.C. Cir. 2001) ("ordinarily [o]nce a prima facie case is shown, the district court *must* conduct a 'show cause' hearing") (alteration in original) (internal quotation marks and citation omitted), which is precisely what Governor Walz has requested and is warranted by the evidence currently before the Court.

Courts have interpreted grand jury secrecy requirements to include "disclosures of events which have already occurred before the grand jury, such as a witness's testimony, but also to disclosures of matters which will occur, such as statements which reveal the identity of persons who will be called to testify." *In re Grand Jury Investigation*, 610 F.2d 202, 216–17 (5th Cir. 1980); *see also United States v. Armco Steel Corp.*, 458 F.Supp. 784, 790 (W.D. Mo. 1978).  The federal government does not dispute this long-recognized understanding.  Instead, lacking any legal support, it incorrectly asserts that "[m]edia reports, timing allegations, public statements, or social-media posts—even if attributed to unnamed 'law enforcement officials'—do not establish disclosure of protected grand jury matters."  Gov't's Resp. at 12-13.  The federal government misconstrues the nature of the violation.  Media reports disclosed the issuance of the grand jury subpoenas in this matter

9

days before the subpoenas were actually served. That information could have only come from a government official bound by Rule 6(e). *See In re Grand Jury Investigation*, 610 F.2d at 217–18. Indeed, the media credited this disclosure to "U.S. officials."[7] This Court has previously found that leaks to the media revealing details related to a grand jury's investigation provide reason to believe the federal government violated Rule 6(e). *See In re Blue Grand Jury*, 536 F. Supp. 3d 435, 436–37 (D. Minn. 2021). It should reach the same conclusion here.

The facts surrounding the instant subpoena are distinguishable from cases where courts might have been reluctant to find a Rule 6(e) violation, such as media leaks attributed to "vague origins [such] as 'sources close to the investigation,'" where "such information could have originated from a number of sources, including the witness himself or the grand jurors," *In re Grand Jury Investigation*, 610 F.2d at 218; where "'leak[s]' of impending indictments turned out to be speculation," *In re Hunter*, 520 F. Supp. 1020, 1022 (W.D. Mo. 1981), *aff'd*, 673 F.2d 211 (8th Cir. 1982); or where the "unspecified sources . . . [were] not particularized and [did] not indicate government or government agent misconduct," *id.* Unlike in those cases, the federal government here is the stated source of prohibited disclosures of information, and because the subpoenas had not yet been served,

---

[7] *See* Perry Stein, *Justice Depart. Launches Criminal Investigation of Minnesota Governor*, Wash. Post (Jan. 16, 2026), https://www.washingtonpost.com/national-security/2026/01/16/trump-minnesota-walz-frey-criminal-investigation/; Camilo Montoya-Galvez et al., *DOJ investigating Gov. Tim Walz, Minneapolis Mayor Jacob Frey over alleged conspiracy to impede immigration agents*, CBS News (Jan. 16, 2026), https://www.cbsnews.com/news/justice-department-investigating-tim-walz-jacob-frey-minnesota/.

there could be no other source. The Court is empowered to, at a minimum, order an investigation into the Trump administration's brazen violations of Rule 6(e). *E.g., In re Blue Grand Jury*, 536 F. Supp. 3d at 437. To preserve the protections of grand jury secrecy that have long served as a bedrock of our criminal justice system, it should not hesitate to do so.

## II.    CONCLUSION

The presumption of regularity that ordinarily attaches to grand jury proceedings cannot insulate this subpoena from scrutiny. Sadly, the departures from regularity of this U.S. Attorney's Office in recent months has been well documented in court filings. Moreover, the federal government has entirely failed to address Governor Walz's Tenth Amendment argument, misapplied the correct First Amendment standard, and neglected to demonstrate the required nexus between the information sought and the subject matter of any legitimate investigation.

Finally, the public record establishes that "U.S. officials" violated Rule 6(e) by disclosing the intent to issue grand jury subpoenas. These brazen violations of grand jury secrecy confirm the punitive purpose of the subpoena and independently warrant judicial intervention.

For the reasons discussed above, the motion to quash should be granted and the Court should conduct an investigation into the federal government's Rule 6(e) violations.

Dated: March 16, 2026

| | |
|---|---|
| FREDRIKSON & BYRON, P.A. | OFFICE OF THE ATTORNEY GENERAL |
| s/ *Joseph Dixon* | s/ *Liz Kramer* |
| Joseph T. Dixon (#0283903)<br>Manda M. Sertich (#0504328)<br>Amanda M. Mills (#0397685)<br>Erik E. Money (#0401757)<br>Megan M. Helstrom (#0403441)<br>**FREDRIKSON & BYRON, P.A.**<br>60 South Sixth Street<br>Suite 1500<br>Minneapolis, MN 55402-4400<br>(612) 492-7000<br>jdixon@fredlaw.com<br>msertich@fredlaw.com<br>amills@fredlaw.com<br>emoney@fredlaw.com<br>mhelstrom@fredlaw.com | Liz Kramer, Reg. No. 0325089<br>Solicitor General<br>445 Minnesota Street, Suite 600<br>St. Paul, Minnesota 55101-2131<br>(651) 757-1010 (Voice)<br>(651) 282-5832 (Fax)<br>liz.kramer@ag.state.mn.us |
| Attorneys for Governor Tim Walz | Attorney for the Office of the Governor of Minnesota |