**RECEIVED**

MAR 1 6 2026

CLERK U.S. DISTRICT COURT
INNEAPOLIS, MINNESOTA

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Grand Jury Subpoena 2022R00519-C to Custodian of Records of the Office of the Mayor of St. Paul | Court File No.: <br><br>**\*\*FILED UNDER SEAL\*\*** <br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH GRAND JURY SUBPOENA BY CITY OF SAINT PAUL AND MAYOR KAOHLY HER** |

### INTRODUCTION

The Government issued grand jury subpoenas to retaliate against state and local officials like Mayor Kaohly Her for engaging in protected political speech, and to coerce them into advancing federal immigration policies. Its opposition brief, which is improperly styled as a response to a joint motion to quash, reinforces that conclusion. Its only discussion of the City of Saint Paul consists of fabricated statements purportedly made by Mayor Her. And it does not even address the Mayor's arguments that the subpoenas were issued for an improper purpose. Finally, the Government offers no explanation as to how media leaks about the subpoenas could be anything but an unlawful disclosure in violation of Rule 6(e).

Considering these leaks, public statements by Department of Justice officials, the political recipients, the related civil litigation, and the subpoenas' facial irregularities, there is nothing ordinary about how the Government has used the grand jury in this case. The subpoenas are not entitled to a presumption of regularity and the Court should exercise its oversight powers to quash them.

## ARGUMENT

### 1. The Government does not identify any nexus between the requested records and criminal obstruction to avoid a First Amendment violation.

The Government's stated basis for issuing grand jury subpoena 2022R00519-C (the "Subpoena"), as well as grand jury subpoenas to other state and local public offices, is "investigating potential obstruction of federal agents' lawful activity." (Opp. at 4.) It contends that "governmental entities implemented formal and informal policies potentially designed to impede, hinder, and obstruct ICE operations, including internal guidance instructing employees not to confirm the presence of individuals sought by ICE, not to consent to entry even when presented with warrants, and to engage in 'respectful stalling' while escalating matters internally." (*Id.*) But it does not assert that the City of Saint Paul ever introduced or implemented such policies. Nor does it identify a single ordinance, formal policy, informal policy, or internal guidance within the City that fits this description. Indeed, it does not cite any written authority within the City at all.

Instead, the Government references alleged statements by Mayor Kaohly Her, wherein she purportedly announced "that she would 'fight' DOJ subpoenas for institutional records relating to 'Operation Metro Surge.'" (Opp. at 5.) The Government describes these statements as "not limited to challenging allegedly unlawful or deficient subpoenas," but "a broad declaration that the City would not cooperate with the federal subpoenas" and "categorical noncompliance with the production of records." (Opp. at 5.) But the Government does not cite where these statements can be found. It does not even provide a date, stating only that the statements occurred in "January 2026" at a "City Hall press conference." (*Id.*) Nor does it

2

identify what "DOJ subpoenas" it refers to. As a result, the City and Mayor are left to guess when these statements allegedly occurred.[1]

On January 12, 2026, Mayor Her appeared at a press conference at Minneapolis City Hall with Attorney General Keith Ellison and Minneapolis Mayor Jacob Frey to announce the lawsuit challenging DHS's unlawful conduct in connection with Operation Metro Surge, the only such press conference she spoke at before receiving the subpoena.[2] Mayor Her's prepared remarks are set forth below:

> Good afternoon, everyone. Today, I'm proud to stand with Mayor Frey and Attorney General Ellison to fight for our residents. This federal occupation of our cities needs to end immediately. Federal law enforcement is racially profiling our residents, creating mass chaos, and undermining the relationship between local government and our communities. We will not stand idly by and watch this happen. With this collective action, we are taking a firm stance to tell federal law enforcement that this cannot happen in our country. It cannot happen in our state, and it cannot happen in Saint Paul. Federal law enforcement is going far beyond what they can and should be doing to enforce immigration laws. They are endangering our community's safety, straining our resources and sowing distrust. While we know we can't control federal agents, we will pull every lever we have to fight back in every way that we can. They've come into Saint Paul and needlessly invaded our neighborhoods and homes. They're targeting us based on what we look and sound like. Our residents are scared, and as local officials, we have a responsibility to act. I want to thank Attorney General Ellison and Mayor Frey for taking a united stance for the people of Minnesota. And to our immigrant and refugee communities, let me be clear. You are a vital part of our city. You are loved and you are wanted, and you are important to the fabric of our state. As a refugee who came to this country, this is the state that welcomed my grandparents here in the late '70s, allowed our family to break the cycle of poverty in one generation, educated us, allowed us to build

---

[1] Presumably, the Government's allegation refers to statements occurring before January 20, 2026, the date the Subpoena was delivered to the Mayor's office. Indeed, it would be nonsensical for the Government to rely upon the Mayor's reaction to receiving the Subpoena.

[2] DRM News, Minneapolis Mayor, Minnesota AG & Saint Paul Mayor Hold Press Conference on ICE (Jan. 12, 2026) https://www.youtube.com/watch?v=tVS-qwettno.

wealth, and within one generation have [] new family members that are educated and a part of this economy and this workforce. That we need to continue to make sure that our state stays that, and that can't happen if ICE continues to run amok of our city and our state. And so, we cannot let this federal administration divide us. We need to come together, now more than ever. Thank you.[3]

Contrary to the Government's characterization, Mayor Her never stated that she would "'fight' DOJ subpoenas for institutional records relating to 'Operation Metro Surge.'" In fact, she did not mention a DOJ subpoena or a federal subpoena of any kind. Nor did she discuss records, let alone institutional records relating to Operation Metro Surge. There is nothing set forth above that reflects "a broad declaration that the City would not cooperate with the federal subpoenas" or "categorical noncompliance with the production of records." The Government misrepresents the record.

Ultimately, the Government is left with nothing to show a nexus between the information sought by the Subpoena and any potential criminal obstruction of federal law enforcement. It does not identify a single policy or actual statement involving the Mayor or the City of Saint Paul, nor does it provide any indicia of actual or threatened use of force that could underlie a criminal charge under 18 U.S.C. § 372.[4] Moreover, even if Mayor Her expressed "categorical noncompliance with the production of records" after taking office in January 2026—which she did not—the Government does not explain why the Subpoena

---

[3] *Id.* at 13:49. Mayor Her also answered a question about heavy-handed uses of force by federal agents but did not discuss fighting subpoenas. *See id.* at 23:54

[4] Notwithstanding a U.S. official's admission that this criminal inquiry is made under 18 U.S.C. § 372, the Government does not address the City and Mayor's arguments that the Subpoena fails to explore actual or threatened use of force.

requests records dating back to January 1, 2025. Nearly the entirety of the materials sought by the Subpoena fall outside of Mayor Her's tenure.

Not only does the Government fail to establish a legitimate criminal investigation, but its apparent fabrication of statements underscores the existence of an improper purpose—to penalize Mayor Her's political speech. As the City's chief executive, Mayor Her appropriately advised her constituents of the dangers posed by the unlawful federal law enforcement conduct in the City and her administration's efforts to challenge those practices in court. This political speech is protected under the First Amendment.[5] And the Government may not weaponize a grand jury because it finds the speech undesirable.

**2. The Government does not address several challenges to the Subpoena.**

In moving to quash the Subpoena, the City of Saint Paul and Mayor Her identify numerous additional deficiencies that the Government ignores in its opposition. These include that the Subpoena constitutes an inappropriate end-around to obtain civil discovery, that it violates the Tenth Amendment by coercing local compliance with federal obligations, that it violates the Due Process protection against vindictive prosecution, that it is overly broad and unduly burdensome, and that it is not entitled to a presumption of regularity because it is riddled with procedural irregularities. Each argument provides an independent basis for the Subpoena to be quashed. Because the Government lodges no opposition to these arguments, the Mayor and the City of Saint Paul ask that the Court grant their requested relief.

---

[5] Despite relying on the Mayor's purported statements at a press conference, the Government concedes that a subpoena directed at a press conference would be problematic. (Opp. at 11).

### 3. The Government's 6(e) violation strips any presumption of regularity.

The Mayor and the City's opening memorandum sets forth in detail that on January 16, 2026, news media outlets reported that the Government opened a federal inquiry into Governor Tim Walz and Minneapolis Mayor Jacob Frey focused on 18 U.S.C. § 372 and that grand jury subpoenas had been issued for both men as part of the investigation." (Mem. in Supp. Mot. Quash at 12-13.) After those subpoenas were delivered on January 20, 2026, Attorney General Pam Bondi publicly confirmed their existence on multiple instances. (*Id.* at 17, n. 30.)

The Government's leaks and disclosures of the subpoenas and focus of the investigation establish a prima facie violation of Rule 6(e). Attorney General Bondi's disclosures of secret grand jury matters are plain as day. But the Government's opposition does not even mention them. As to the media reports of the then-unserved subpoenas, the Government cites no authority for its proposition that "[m]edia reports, timing, allegations, public statements, or social media posts—even if attributed to unnamed 'law enforcement officials'—do not establish disclosure of protected grand jury matters, particularly where the information discussed could have been obtained independently of the grand jury process." (Opp. at 12-13.) On the contrary, this Court has held that such news articles "provide reason to believe" a 6(e) disclosure has occurred. *In re Blue Grand Jury*, 536 F.Supp.3d 435, 437 (D. Minn. 2021). Moreover, under the regular process for issuing a grand jury subpoena, only the DOJ prosecutor possesses knowledge of the subpoena and the focus of the investigation, at least until it has been served. Here, disclosures to news outlets occurred days before service. The only conclusion is that "an actual misuse has

6

occurred." *In re Grand Jury Subpoenas Dated Feb 28, 2002, Mar. 26, 2003, Oct. 4, 2004*, 472 F.3d 990, 1000 (8th Cir. 2007).

These knowing and intentional leaks signal bad faith and abuse of the grand jury process. They reinforce the arguments set forth above that the Subpoena was issued for an improper purpose and should be quashed. At a minimum, the Rule 6(e) violations deprive the Government of any presumption of regularity in these proceedings.

### CONCLUSION

For the reasons set forth above and in their opening memorandum of law, Mayor Kaohly her and the City of Saint Paul respectfully request that the Court quash the Subpoena.

Dated: March 16, 2026

**ROBINS KAPLAN LLP**

Brendan V. Johnson (0397902)
Timothy Billion (0395272)
Bahram Samie (0392645)
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone:   612.349.8500
Facsimile:   612.339.4181
BJohnson@RobinsKaplan.com
TBillion@RobinsKaplan.com
BSamie@RobinsKaplan.com

*Attorneys for the City of Saint Paul*
*and Mayor Kaohly Her*