RECEIVED

MAR 1 6 2026

CLERK, U.S. DISTRICT COURT
INNEAPOLIS, MINNESOTA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

Case No.

**\*\*FILED UNDER SEAL\*\***

| | |
|---|---|
| In re Grand Jury Subpoena 2022R00519- D Issued to the Custodian of Records for the Office of the Attorney General of Minnesota | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH GRAND JURY SUBPOENA BY ATTORNEY GENERAL KEITH ELLISON AND THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF MINNESOTA** |

## INTRODUCTION

DOJ is unable to articulate any legitimate basis for issuing a grand jury subpoena (the "Subpoena") to the Office of the Minnesota Attorney General ("OAG"). Its silence regarding Attorney General Ellison ("AG Ellison") and the OAG reaffirms what was made obvious by the Trump Administration's public statements threatening AG Ellison with "consequences": the Subpoena is just the Trump Administration's latest improper attempt to exact retribution against the President's political opponents. The Trump DOJ now regularly abuses the grand jury process whenever President Trump calls for an investigation of his adversaries. *See Board of Governors of the Federal Reserve System v. United States,* Case No. 1:26-mc-00012-JEB at (D.D.C. Mar. 11, 2026) (attached as Exhibit 1) (quashing grand jury subpoena issued to Federal Reserve Board to investigate Fed Chair Jerome Powell because it "targeted Powell out of malice or an intent to harass" and concluding "[t]he President's appointed prosecutor promptly complied" with the

President's demand to "rid him of his troublesome Fed Chair."); *United States v. Adams,* 777 F. Supp. 3d 185, 234 (S.D.N.Y. 2025) (rejecting the Trump DOJ's argument that it was appropriate to leverage prosecution "in exchange for [Mayor Adams's] support of the administration's policy agenda" and concluding that it is unethical under ABA Standard 1-1.6(a) for prosecutors to employ potential prosecution as "a form of [political] logrolling.")

The Trump DOJ is again abusing the grand jury process, to punish AG Ellison for exercising his First Amendment right of political speech, and to try to bully AG Ellison from exercising his state constitutional and statutory authority. This investigation baselessly attacks Minnesota's chief lawyer and its public law office for issuing advisory opinions and litigating against the Administration. And it unjustifiably seeks to invade the OAG's files, which are protected by the attorney-client privilege, the work product doctrine, and the deliberative process privilege.

Apart from a perfunctory mention of the OAG in its preamble, DOJ's response does not specifically address any of AG Ellison and the OAG's arguments to quash. Rather, DOJ attempts to rely on the presumption of regularity underlying grand jury processes, ignoring the documented context of the Administration's threats, the prosecution's own violation of grand jury secrecy, and all indicia demonstrating that the Subpoena is highly *irregular.* Further, viewed in the larger context of Operation Metro Surge and the significant change of direction and ethical-related controversies at the U.S. Attorney's Office over the last few months, neither the Subpoena nor the prosecutors deserve any deference from this Court. The Court should quash the Subpoena in its entirety as abusive and lacking any legitimate investigative purpose.

**ARGUMENT**

**I.      The Subpoena Was Issued for Improper Purposes and Does Not Enjoy any Presumption of Regularity.**

Despite claiming that "[c]ontext matters," DOJ asks the Court to afford the Subpoena a presumption of regularity. (Gov. Resp. at 9.) On the contrary, DOJ asks the Court to close its eyes to all of the relevant context cited in the movants' opening briefs, including:

- President Trump's threat of "THE DAY OF RECKONING AND RETRIBUTION" in Minnesota, published on Truth Social a week before the Subpoena was issued, followed by the Trump Administration's threat of "consequences" against Minnesota for its failure to cooperate with the Administration's immigration enforcement policies, posted on the White House website four days before the Subpoena was issued;

- Leaks by a "U.S. official" to the media that subpoenas would be issued to Minnesota officials, in violation of grand jury secrecy rules;

- The dishonest effort to cast state and local officials' political speech as criminal "obstruction" of federal agents, when obstruction crimes require the use of force or the threat of force;

- The timing of the Subpoena, which was issued while AG Ellison and the OAG were litigating multiple civil lawsuits regarding immigration against the Trump Administration and days after the State of Minnesota sued the Trump Administration seeking to end Operation Metro Surge;

- The extreme overbreadth of the Subpoena, which would require the OAG to collect and turn over "[a]ll written records" and "all communications . . . relating to federal immigration enforcement in the State of Minnesota;" and

- The unusual effort to obtain broad categories of records from a law office without any regard for the attorney-client privilege or other relevant privileges.

Moreover, DOJ does not address any of the numerous irregularities that are apparent from the face of the Subpoena. (*See* AG and OAG Opening Br. at 48-51.) Nor does DOJ

acknowledge the context surrounding the U.S. Attorney's office in this District. The Office has been decimated by the departures of career prosecutors, has been repeatedly ordered to show cause why its prosecutors should not be held in contempt, has unnecessarily sparred in writing and in Court with judges of this district, and has recently dismissed numerous cases after seeking felony arrest warrants charging alleged assaults on federal officers under 18 U.S.C. § 111.

The totality of these circumstances eliminates any presumption of regularity, and in such circumstances, the Court should quash the Subpoena to prevent misuse of the grand jury process by DOJ. *In re Grand Jury Subpoenas to Off. of New York State Att'y Gen. [Leticia James]*, No. 25 MISC. 19 (LGS), 2026 WL 60793, at *10 (N.D.N.Y. Jan. 8, 2026) (citing *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985)). As in the cases of Jerome Powell, James Comey, Leticia James, and Eric Adams, the Trump Administration publicly called for an abuse of grand jury proceedings, and DOJ has quickly complied. Ex. 1, *Federal Reserve System*, Case No. 1:26-mc-00012-JEB at 19-22. The context demonstrates that the Subpoena was not issued through "normal channels" – i.e., through good faith deliberation by impartial career prosecutors and law enforcement agents. *See United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991). Rather, the Subpoena's timing, its context, and face of the Subpoena itself all demonstrate that the U.S. Attorney issued the subpoena purely as an act of fealty to the President, out of malice, with the intent to harass, and as an abuse of the grand jury process. *Id.*

**II.    DOJ Has Failed to Meet its Burden to Show a Proper Investigative Purpose.**

Where, as here, the presumption of regularity is overcome, DOJ has the burden to justify the subpoena by showing that it was issued for a proper purpose. *See R. Enters., Inc.*, 498 U.S. at 302 ("a court may be justified in a case where unreasonableness is alleged in requiring the Government to reveal the general subject of the grand jury's investigation before requiring the challenging party to carry its burden of persuasion" that a grand jury subpoena is unreasonable); *see also Federal Reserve System*, Case No. 1:26-mc-00012-JEB at 14-15 (shifting the burden to the government to attempt to explain its investigative purpose when the presumption of irregularity was lost due to the circumstances of the Trump Administration encouraging a criminal investigation of Jerome Powell).

DOJ claims that it is investigating the "potential obstruction of federal agents' lawful activity." (Gov. Resp. at 4.)  But DOJ's own examples of the alleged conduct it claims suggest criminal obstruction of immigration agents belie that it is acting out of malice and retribution, not with any legitimate investigative purpose. The government provides five examples:

- A city official making a statement during a press conference that DOJ interpreted as a refusal to comply with *future* subpoenas;

- Another city official authoring a proposed ordinance that DOJ believes "could be used for obstructive purposes;"

- A third city official advocating in favor of an eviction moratorium, which DOJ claims would negatively impact ICE's ability to make arrests;

- A claim that officials in one county were instructed not to provide documents to ICE even in response to a warrant or subpoena; and

- A claim that officials in another county were advised to respond to ICE requests by engaging in "respectful stalling."

(Gov. Resp. at 5-8.) Thus, the examples DOJ claims to be investigating constitute core First Amendment political speech, the performance of lawful state and local governmental functions, or both.

Although DOJ fails to cite any statute it is investigating, as explained in the movants' opening brief, government officials leaked to the press that they are ostensibly investigating potential violations of 18 U.S.C. § 372. (AG and OAG Opening Br. at 22-24.) But the above examples do not come close to suggesting that anyone affiliated with any of the subpoenaed parties engaged in "actual physical contact, or…such threat or display of physical aggression toward [an] officer as to inspire fear of pain, bodily harm, or death." *United States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir. 1993) (analyzing the elements of the analogous statute, 18 U.S.C. § 111.) Further, the above examples cannot constitute "true threats," because the statements under investigation cannot be interpreted "as a serious expression of an intent to harm or cause injury to another." *United States v. Beale*, 620 F.3d 856, 865 (8th Cir. 2010) (interpreting the "true threat" requirement underlying 18 U.S.C. § 372); *see also Virginia v. Black*, 538 U.S. 343, 359 (2003) ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."). Thus, DOJ lacks any good faith basis to believe the OAG documents and records could establish a violation of 18 U.S.C. § 372 or any similar statute.

6

Finally, none of DOJ's examples and nothing in its brief suggest that any documents related to its vague and unfounded investigation will be found in the OAG's presumptively privileged files. Further, DOJ fails to refute that AG Ellison has only ever called for "peaceful" protest in the face of Operation Metro Surge,[1] and it has no basis to believe AG Ellison (or anyone else at the OAG) has ever made any true threat of force. As importantly, the Subpoena is not targeted at obtaining records related to the use of force or threats of force. Rather, it indiscriminately requests all records and communications related to federal immigration enforcement. Accordingly, the Subpoena constitutes an "arbitrary fishing expedition" unrelated to any proper investigative purpose and should be quashed. *R. Enters., Inc.*, 498 U.S. at 299.

### III. DOJ Ignores the Breadth of Authority Supporting the Motion to Quash.

Painting with a broad brush, DOJ incorrectly claims that all of the cases cited by the movants "involve post-indictment discovery disputes, compelled personal testimony, attorney-client privilege, or circumstances in which adversarial criminal proceedings had already commenced." (Gov. Resp. at 9.) Not so. *See, e.g., In re Grand Jury Subpoena (Legal Servs. Ctr.)*, 615 F. Supp. 958, 964-65 (D. Mass. 1985) (quashing subpoenas to law offices seeking evidence of potential immigration violations); *In re Stolar*, 397 F. Supp. 520, 523 (S.D.N.Y. 1975) (quashing grand jury subpoena as abuse of grand jury process where subpoena was issued solely so FBI agent could obtain information for his

---

[1] Press Release, Office of the Minnesota Attorney General, Statement from Attorney General Ellison, (Jan. 7, 2026 (date of homicide of Renee Good)), https://www.ag.state.mn.us/Office Communications/2026/01/07 Statement.asp.

"investigative file," not to advance grand jury's good faith investigation of any crime); *In re Grand Jury Subpoena for THCF Med. Clinic Records*, 504 F. Supp. 2d 1085, 1090–91 (E.D. Wash. 2007) (quashing a subpoena because the state "ha[d] an important interest in the integrity of its" legal regime).

Moreover, DOJ cannot get far by suggesting that the movants' other cases do not have *identical* facts or procedural postures to this unprecedented case; the fact remains that grand jury abuse must be remedied by the Court no matter how it arises. *See, e.g., Ealy v. Littlejohn*, 569 F.2d 219, 227 (5th Cir. 1978) (ending a grand jury investigation for grand jury abuse based on its finding that "[i]t would be a sorry day were we to allow a grand jury to delve into the membership, meetings, minutes, organizational structure, funding and political activities of unpopular organizations on the pretext that their members might have some information relevant to a crime"); *United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979) (dismissal of the indictment is the only appropriate remedy where grand jury abuse and prosecutorial misconduct before the grand jury is only discovered by the Court after an indictment has been issued.). As the *Federal Reserve System* Court recently recognized in quashing another abusive Trump DOJ grand jury subpoena, "when new facts present new ways that prosecutors might be abusing their subpoena power, courts do not hesitate to declare those purposes improper." Ex. 1, Case No. 1:26-mc-00012-JEB at 13 (citations omitted). AG Ellison and the OAG have provided the Court with ample precedent supporting its motion to quash the Subpoena as a transparent abuse of the grand jury process, an arbitrary fishing expedition, a violation of Constitutional rights, and an invasion of privilege, among other reasons.

## IV. The Movants Have Demonstrated a *Prima Facie* Case that DOJ Violated Grand Jury Secrecy.

By identifying numerous media reports disclosing the strategy and direct of the grand jury investigation, the statute under investigation, the witnesses to be subpoenaed, and the potential targets of the investigation – all before the Subpoena had even been served – the movants have amply demonstrated a *prima facie* case of a grand jury secrecy violation. *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989) ("It is generally understood that a *prima facie* case of a violation of Rule 6(e)(2) is made when…media reports disclosed information about 'matters occurring before the grand jury' and indicated that the sources of the information included attorneys and agents of the Government.") (internal quotations omitted); *see also In re Blue Grand Jury*, 536 F. Supp. 3d 435, 436 (D. Minn. 2021) (news "articles provide reason to believe that 'matter[s] occurring before the grand jury' were disclosed to reporters in violation of Fed. R. Crim. P. 6(e)").

DOJ offers no response to the movants' *prima facie* case of Rule 6(e) violations. The circumstances indicate that an attorney for the government must have either shared secret grand jury information with the press (or another government official not entitled to see the information), or that a non-DOJ official was aware of the plans to issue Subpoenas because they directed DOJ to do so. Either way, the circumstances undercut DOJ's suggestion of a regular grand jury process and warrant a court-ordered investigation.

## V. DOJ Forfeits Any Response to AG Ellison and the OAG's Arguments.

The government waives and/or forfeits the arguments it has chosen not to make in response to AG Ellison and the OAG's motion. *See United States v. Dowdell*, 70 F.4th 134,

140 (3rd Cir. 2023) ("We enforce waiver and forfeiture against criminal defendants and the government equally."); *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); *Calzone v. Summers*, 942 F.3d 415, 435 (8th Cir. 2019) ("Even where the record factually supports what might be a better legal argument for reversal, it is not our place to raise it for a litigant who forfeits and waives the argument."). Here, DOJ has waived or forfeited most of AG Ellison's and the OAG's arguments, and it should not be allowed to raise new arguments for the first time at the motion hearing.

A. DOJ Concedes that Attorney General Ellison and the OAG Both Have Standing to Move to Quash

DOJ concedes that that AG Ellison is a proper party to the quash litigation. As explained in the movants' opening brief, AG Ellison has standing for multiple reasons: (1) the OAG is in many ways inseparable from AG Ellison as an officeholder; (2) AG Ellison is an apparent target of the investigation and had made a well-founded argument of grand jury abuse; (3) AG Ellison asserts valid privileges in his capacity as the state's lawyer; and (4) AG Ellison has a possessory or ownership interest in the records of his office, as recognized by state statutes. (Movants' Opening Br. at 19-22.)

B. DOJ Concedes that AG Ellison Was Engaged in Protected Political Speech and Fails to Demonstrate Narrow Tailoring to a Compelling State Interest.

Although DOJ generally argues that the Subpoenas are not designed to infringe on AG Ellison's First Amendment rights, DOJ does not contest that AG Ellison's advisory

opinions and his public statements – including those specifically criticized in the Trump Administration's "consequences" article on the White House website – constitute core political speech. DOJ also does nothing to attempt to meet its burden to demonstrate that the Subpoena is narrowly tailored to serve any compelling state interest that might warrant a grand jury investigation that might restrain AG Ellison's free speech. To the contrary, DOJ admits that its Subpoena is broad and that it engaged in a scattershot approach based on mere speculation that it might uncover potential obstruction, apparently without even considering the elements it must prove under 18 U.S.C. § 372. In these circumstances, the Subpoena must be quashed as an improper infringement on AG Ellison's First Amendment rights.

C. DOJ Waives and Forfeits Any Response to Movants' Tenth Amendment Arguments.

DOJ completely ignores AG Ellison and the OAG's arguments that the Subpoena violates AG Ellison and the OAG's exercise of state constitutional and statutory authority in violation of the Tenth Amendment. As such, DOJ has forfeited any counter argument, and the Subpoena should be quashed. By using the Subpoena to attempt to coerce and exact retribution against AG Ellison and the OAG for exercising their constitutional and statutory authority to oppose the Trump Administration's immigration policies, DOJ violates the Tenth Amendment. *Adams*, 777 F.Supp.3d at 191-92, 233 (the Trump DOJ "threatening federal indictment" against New York Mayor Adams to coerce him into "alignment with current federal immigration initiatives and policies" amounted to an anticommandeering violation; "[a]lthough this prohibition has typically been applied to acts of Congress, the

11

principles that underpin it – namely, federalism and political accountability – would similarly preclude an attempt by the federal executive branch to coerce a state or local official into implementing federal policy objectives").

D.    DOJ Concedes that the Subpoena Invades Established Privileges.

DOJ ignores and forfeits movants' claims of privilege, specifically the attorney-client privilege, the work product doctrine, and the deliberative process privilege. (AG and OAG Opening Mem. at 40-43.) Instead of responding to these privilege arguments, DOJ curiously denies they were made. (Gov. Resp. at 1 (claiming the movants do not move to quash "because the subpoenas seek privileged material").)

Where, as here, "nearly every item identified in the Grand Jury subpoena clearly falls within the attorney-client privilege or work product rule, it is unnecessary for the Court to conduct a preliminary *in camera* inspection to establish the existence of a privilege." *In re Grand Jury Subpoena (Legal Servs. Ctr.)*, 615 F. Supp. at 964-65. Under such circumstances, "the burden shifts to the government to show that an exception to the privileges exists which could enable the Court to permit the subpoenas to stand." *Id.* at 965. Here, DOJ issued the Subpoena to the OAG – the state's law office. According to media leaks, the investigation targets AG Ellison – the state's chief lawyer. In addition to being highly irregular, grand jury subpoenas to lawyers and law offices raise significant privilege concerns, particularly where "nearly every item" called for by the subpoena is privileged. *Id.* DOJ's failure to address privilege is particularly stark given its suggestion that it chose to issue the subpoenas to "a broad range of agencies" in a transparent fishing expedition rather than to narrowly tailor the subpoenas to a defined investigative purpose.

The Court should therefore quash the Subpoena to prevent the DOJ from invading established privileges, and to reaffirm that DOJ may not broadly seek unfettered access to nearly every privileged item in a law office. An order quashing the Subpoena would also prevent the undue burden of being forced to engage in a laborious privilege review of every document at the OAG related to immigration enforcement, particularly given the significant number of OAG advisory opinions and court cases on related topics.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in movants' opening memorandum, the Court should quash the Subpoena, investigate whether an attorney for the government violated ethical responsibilities or improperly breached grand jury secrecy, and consider enjoining the United States from continuing to abuse the grand jury process.

Respectfully submitted,

Dated: March 15, 2026

OFFICE OF THE ATTORNEY GENERAL

/s/ Liz Kramer

Liz Kramer, Reg. No. 0325089
Solicitor General
Timothy C. Rank, Reg. No. 0245392
Assistant Attorney General
Kimberly A. Svendsen, Reg. No. 0504097
Special Counsel
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010 (Voice)
liz.kramer@ag.state.mn.us

*Attorneys for the Office of the Minnesota Attorney General*

DORSEY & WHITNEY LLP

s/ Surya Saxena

Surya Saxena, Reg. No. 0339465
Nicole Engisch, Reg. No. 0215284
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402
612-340-2600
saxena.surya@dorsey.com

*Attorneys for Keith Ellison*