

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

*In re Grand Jury Subpoena*
*2022R00519-E to Custodian of Records*
*for the Ramsey County Board of*
*Commissioners*

Court File No. 02ERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**RECEIVED**

**MAR 1 6 2026**

**\*\*FILED UNDER SEAL\*\***

**REPLY IN SUPPORT OF THE**
**RAMSEY COUNTY BOARD OF**
**COMMISSIONERS' MOTION TO**
**QUASH GRAND JURY SUBPOENA**
**NO. 2022R00519-E**

## INTRODUCTION

The Government could not, and did not, plausibly dispute that the true purpose of

its Subpoena is coercion, harassment, and retribution in violation of the Ramsey County

Board of Commissioners' ("RCBC") Tenth Amendment rights, choosing to wholly ignore

that issue. Instead, the Government sought to vindicate the entirety of its Subpoena by

offering a single pretextual justification based on a quote from "internal guidance"[1] that

was selectively edited so far out of context that it appears to be a naked attempt to mislead

this Court. And despite this wildly misguided approach, the Government remained unable

to articulate a legitimate investigative purpose in support of its far-flung demands. The

---

[1] The Government failed to include or cite to the document it purports to quote in its brief, leaving the task of locating it to RCBC and the Court. RCBC's Reply assumes the Government is referring to the attached Exhibit 1, which is the only publicly-available document consistent with the Government's claims. (*See* Second Declaration of Steven L. Schleicher in Support of the Ramsey County Board of Commissioners' Motion to Quash Grand Jury Subpoena No. 2022R00519-E, Ex. 1.) RCBC respectfully requests the Court require the Government to either confirm this is the document they have quoted, or provide the actual document upon which the Government has relied in its full and unedited form.

Government's failure to address RCBC's substantial Tenth Amendment arguments is a tacit concession that it cannot do so and, moreover, waives any argument to the contrary. The Subpoena could be quashed for those reasons alone. But the Government's misrepresentation by omission warrants separate examination.

As outlined below, the Government casts guidance properly directing frontline administrative staff to immediately contact a supervisor, who would immediately contact legal counsel, before providing documents or data to ICE agents as one of the "clearest documented examples of guidance that could impede the execution of federal warrants and subpoenas and explicitly obstruct federal agents in their lawful duties." (Gov. Br. at 8.) But advising someone to seek legal counsel is not a crime. And the same guidance specifically instructs employees not to interfere with or make false statements to ICE agents, not to assist individuals in escaping or hiding from ICE agents, and that interfering could be a crime. Why the Government chose to quote the guidance out of context, without providing the entire document, or even a citation so the Court could find and review the entire document, is unknown. To quote the Government's response, "additional investigation is needed to answer all these questions." (Gov. Br. at 7.) RCBC respectfully requests the Court require the Government to provide answers at the hearing. The Government's opposition briefing not only fails to justify its investigation, it is a continuation of its abuse of the grand jury process. The Subpoena should be quashed.

## ARGUMENT

### I.   The Subpoena is Retaliatory, Coercive, and Lacks a Proper Purpose.

To determine whether a grand jury subpoena's purpose is improper, courts follow a burden-shifting framework. *See, e.g., United States v. Calk*, 87 F.4th 164, 186-88 (2d Cir. 2023) (applying burden shifting framework to assess investigative purpose); *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 30 (2d Cir. 1985) (requiring the government satisfy its burden "to rebut the defendant's strong showing" of improper purpose); *cf. In re Grand Jury Subpoena*, 175 F.3d 332, 339-40 (4th Cir. 1999) (discussing the "showing of relevance" the government must make in response to an alleged illegitimate purpose); *In re Grand Jury Subpoena Battle*, 787 F.2d 327, 330 (6th Cir. 1984) (noting that, where a movant makes allegations showing prosecutorial misuse of the grand jury process, the government must justify its requests); *Ealy v. Littlejohn*, 569 F.2d 219, 227-30 (5th Cir. 1978) (requiring the government provide a "plausible explanation" for investigation following showing of improper purpose).

Under this framework, a movant bears the initial burden of "presenting concrete allegations of Government misconduct," which defeats the presumption of regularity generally afforded to grand jury subpoenas and requires closer inquiry. *See Calk*, 87 F.4th at 186 ("[C]ourts may not ignore possible abuse of the grand jury process . . . ."); *see also United States v. Raphael*, 786 F. Supp. 355, 359 (reasoning that where, "on its face," the subpoena "appears questionable," closer examination is required). Once the movant presents sufficient allegations, the burden shifts to the government to "come forward with evidence . . . to show that the subpoena was not motivated by an improper purpose." *See*

3

*Calk*, 87 F.4th at 186 (citation omitted); *see also In re Grand Jury Subpoena Battle*, 748 F.2d 327, 330 (6th Cir. 1984) (requiring the government make a showing of relevancy after an initial showing of harassment or prosecutorial misuse). If the government carries its burden, the burden shifts back to the movant to demonstrate the government's proffered purpose is pretextual. *Calk*, 87 F.4th at 186; *Littlejohn*, 569 F.2d at 229 (considering concrete allegations of improper subjects of inquiry by a grand jury in determining that claimed investigative purpose was pretextual).

Here, the Government responds to RCBC's substantial allegations with an unsupported offer of proof articulating a purported purpose that bears no relation to its requests, contravenes RCBC's Tenth Amendment rights, and quotes a guidance document so out of context that, if intentional, it would constitute a material misrepresentation to this Court. This response is nothing more than a continuation of the Trump Administration's court-recognized history of abusing the investigative power of the grand jury process to coerce policy changes—a D.C. District Court just quashed a grand jury subpoena on the same grounds. *See* Memorandum Opinion, *In re Grand Jury Subpoena Nos. [redacted], Bd. of Gov. of Fed. Reserve Sys. v. United States*, No. 26-mc-00012 (JEB) (D.C. Dist. Ct. Mar. 11, 2026) (ECF No. 23) (quashing a grand jury subpoena to the Federal Reserve as the claimed investigative purpose was mere pretext for a campaign to harass and pressure Jerome Powell to yield to the President or resign). The Subpoena lacks a proper purpose and should be quashed.

4

### a.   RCBC Provided Substantial Allegations of Improper Purpose.

To satisfy its initial burden, a movant need only "present valid reasons to question the propriety of the grand jury subpoena." *Calk*, 87 F.4th at 187; *see also United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) (noting "particularized proof of irregularities in the grand jury process" overcomes the presumption of regularity generally afforded to subpoenas) (quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in judgment)). Valid reasons include any "indicative sequence of events demonstrating an irregularity." *See Raphael*, 786 F.Supp. at 358-59 (noting that even though there were potential proper purposes for grand jury proceedings, a number of circumstantial factors "shed an unflattering light on the Government's actions" and satisfied the burden). Examples of valid reasons include the timing of the subpoena compared to other relevant events, the nature of the information sought, express statements regarding the subpoena's purpose, and abnormalities in the procedure through which the subpoena was issued. *See, e.g., Calk*, 87 F.4th at 186 (issuing subpoena shortly before trial date suggests improper purpose); *Littlejohn*, 569 F.2d at 229 (seeking sensitive information that is facially unrelated to a crime suggests improper purpose); *Raphael*, 786 F.Supp. at 359 (alleged statement by government regarding subpoena's purpose, which government refuted, suggests improper purpose); *see also, e.g., In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.*, No. 25-MC-19, 2026 WL 60793, at *11 (N.D.N.Y. Jan. 8, 2026) (quotation omitted) (finding subpoena issued outside "normal channels" to be unreasonable under Fed. R. Crim. P. 17(c)).

Here, RCBC has made substantial allegations that the Subpoena is retaliatory and coercive: It was issued amidst a swarm of public statements from the Government expressing frustration with Minnesota local governments' refusal to assist with federal immigration enforcement and seeking to coerce them into doing so. It was issued mere days after it was emphasized to the Government—in litigation against several subpoena recipients seeking to compel assistance with immigration enforcement—that Ramsey County had obtained an advisory opinion from the Minnesota Attorney General's office affirming its right to decline to assist with immigration detainers, a topic about which the Subpoena specifically inquires. (*See* Subpoena, Request No. 4.) And, tellingly, it was issued via a process riddled with irregularities, including leaking this grand jury investigation to the national news media. *See* (RCBC Br. at 16-21.) Although the Government insists that grand jury subpoenas are presumed to be proper in general, it fails to address the specific allegations raised by RCBC about the Subpoena issued here. Instead, the Government concedes it has the burden to establish a proper purpose, but fails to do so.

> **b.    The Government Has Not Established a Proper Purpose And Cannot Do So.**

After RCBC's preliminary showing, the burden shifted to the Government to "come forward with evidence . . . that the subpoena was not motivated by an improper purpose." *Calk*, 87 F.4th at 186 (citation modified) (emphasis added). To do so, the Government must provide "bona fide justifications" supported by evidence demonstrating the subpoena's investigative purpose. *Id.* at 188. In *Calk*, the government demonstrated a proper investigative purpose, rather than the improper purpose of trial preparation, by presenting

6

a sworn affidavit stating the subpoena was served in support of an investigation into a conspiracy charge, along with evidence that the government had initially hesitated to include the charge until the grand jury proceedings provided additional support. *Id.* at 187. The *Calk* court found that, although an affidavit alone may not suffice, taken together, this evidence disproved the "seemingly suspicious timing" of the subpoena and explained the government's investigative decision making. *Id.*

In contrast, unsupported or implausible representations are insufficient to establish a proper purpose. *See Simels*, 767 F.2d at 30; *Littlejohn*, 569 F.2d at 230. In *Simels*, the Second Circuit found the government's statement that its attorney had been "otherwise occupied" did not justify the subpoena's suspicious timing, reasoning the explanation was "insubstantial and plainly inadequate to rebut the defendant's strong showing" of impropriety. *Id.* Likewise, in *Littlejohn*, the Fifth Circuit found the government's sworn in-court testimony about the purpose of its grand jury questioning failed to provide a "plausible explanation" sufficient to meet its burden. 569 F.2d at 230.

Here, instead of addressing the substantial allegations and Tenth Amendment arguments made by RCBC, the Government seeks to justify the entirety of its Subpoena with an unsupported offer a proof: a single sentence allegedly quoted from a Ramsey County internal guidance document that was allegedly attached to an email from a Ramsey County employee. (Gov. Br. at 7.) The Government elected not to provide either the guidance document or the email to the Court, nor did it provide a citation that would permit the Court to locate the documents on its own. Additionally, the Government failed to provide any identifying information—including the title of the document, the date of the

7

document, the sender or recipients, or the date of the email to which the document was attached—that would permit RCBC to do the same. The Government's silence speaks volumes.

Moreover, whatever the form, the purported justification must relate to the information being sought. *See In re Grand Jury Subpoena*, 175 F.3d at 338-39 (rejecting the government's justification where subpoena sought information irrelevant to that stated purpose); *see also In re Grand Jury Proc. (Schofield)*, 486 F.2d 85, 93 (3d Cir. 1973) (requiring the government to make a preliminary showing that "each item is at least relevant to an investigation being conducted by the grand jury and . . . is not sought primarily for another purpose"). Here, in addition to being wholly unsupported, the Government's purported justification—*i.e.* that RCBC may have "categorically instructed county personnel to withhold records even when presented with federal legal process" (Gov. Br. at 7)—is facially unrelated to many of the Subpoena's requests. *See, e.g.*, Request No. 3 (seeking records related to the Ramsey County Sheriff's Office that "tend[] to show a refusal to come to the aid of immigration officials"); Request No. 4 (seeking records related to "compliance or lack of compliance with immigration detainers"); Request No. 7 (seeking records related to the "doxxing, identifying, or surveilling immigration officers"). The Government has failed to meet its burden in both form and substance.

### c.  Overwhelming Evidence Demonstrates the Government's Stated Purpose Is Pretextual.

Even if the Court concludes the Government's single, unsupported statement could establish a potentially proper purpose, overwhelming evidence demonstrates this

8

justification is pretextual, including, without limitation, the Government's statements seeking to coerce local cooperation with immigration enforcement, the Government's statements of animus toward Minnesota, the timing of the Subpoena, the leaking of the grand jury investigation, the nature of the Subpoena's requests (which run afoul of the Tenth Amendment), the Government's abject failure to respond to the majority of RCBC's arguments (including its Tenth Amendment arguments), and the complete lack of any nexus between the Government's stated purpose and the actual information it has sought. Taken together, this record strongly demonstrates pretext. *See Littlejohn*, 569 F.2d at 229 n.35 (rejecting pretextual justification for questions about finances with no nexus to purported proper purpose); *Raphael*, 786 F.Supp. at 359 (determining that several procedural issues that "shed an unflattering light on the Government's actions" required an investigation into the validity of the government's purported explanation of proper purpose).

The most glaring evidence of pretext is the Government's opposition brief itself. According to the Government, the entirety of its criminal investigation into RCBC rests on a single sentence attributed to an unidentified RCBC "internal guidance" document that—notwithstanding the Government's decision to withhold the document from the Court—the Government claims constitutes one of the "clearest documented examples of guidance that could impede the execution of federal warrants and subpoenas and explicitly obstruct federal agents in their lawful duties." (Gov. Br. at 8.) Although the Government chose not to provide or even identify the document in its brief, from the quotation and context that were provided, RCBC suspects the Government is referring to a social media post made

9

by the X account @CrimeWatchMpls, which RCBC has attached hereto as Exhibit 1. *See* CrimeWatchMpls (@CrimeWatchMPls), x.com (Nov. 14, 2025) https://x.com/CrimeWatchMpls/status/1989357816688357691. This social media post purports to include screenshots of an email from a Ramsey County employee to her staff attaching a one-page document providing guidance to Ramsey County employees on interacting with ICE. (Ex. 1) The one-page guidance includes the language quoted without attribution in the Government's brief, which the Government uses to contend that RCBC "categorically instructed county personnel to withhold records even when presented with federal legal process." (Gov. Br. at 7.)

The Government's characterization is a gross mischaracterization. The guidance is facially directed to frontline employees who interact with the public or operate at the threshold of public and private spaces. (*See* Ex. 1 ("[Y]ou do not have authority to grant access . . . Do not bring ICE agents or immigration officials to a non-public area.").) It informs those workers of the process to follow if approached by ICE agents or immigration officials, contemplating that the agents or officials could wait onsite for the process to be completed. (*See* Ex. 1 at No. 2 ("ICE agents or immigration officials should only wait in a public lobby or outside.").) That process includes:

- "***Immediately*** notify[ing] a supervisor or onsite lead" who can "take over and interact with the ICE agent or immigration official." (Ex. 1 at No. 3 (emphasis added).)

- For that supervisor to ask the ICE agent "if there are ***exigent circumstances***" presumably because that may require a more emergent response. (Ex. 1 at No. 5, bullet 5 (emphasis added).)

10

- For that supervisor to "***immediately***" contact Ramsey County's legal counsel and send legal counsel any documents provided by ICE agents or immigration officials "for review and ***instructions on how to proceed***." ( Ex. 1 at No. 4 & No. 7 (emphasis added).)

Although the guidance includes the language that "[n]o data or document should be provided to the ICE agent, regardless of warrant or subpoena," it clearly does not do so to "categorically . . . withhold records, regardless of legal process," as the Government contends, but rather to temporarily engage in a process that permits legal review. (*Compare* Ex. 1 at No. 6 *with* Gov. Br. at 7.) In fact, the two sentences immediately preceding the quoted language explicitly state so: "Do not attempt to interpret any documents provided by ICE. Any document provided by an ICE agent needs to be reviewed and evaluated by legal counsel." (Ex. 1 at No. 6.) The remainder of the document only confirms that, contrary to the Government's allegations, the guidance does not instruct employees to engage in criminal interference or obstruction:

- If an ICE agent forcefully insists on accessing non-public spaces prior to contact being made with legal counsel . . . . do not interfere." (Ex. 1 at No. 8.)

- "Do not make false statements to the ICE agent." (Ex. 1 at bullet 1.)

- "Do not assist individuals in escaping or hiding from ICE." (Ex. 1 at bullet 3.)

- "Interfering with ICE could subject an employee to criminal penalties." (Ex. 1 at bullet 2.)

11

There can be no proper purpose for withholding the complete contents of this document from the Court.[2] Seeking legal advice is not a crime.[3]

Considering the context of the guidance document, to take the Government's stated purpose at face value would be to suggest the Government believes it is a crime for Ramsey County to put the onus of reviewing and responding to legal process on its legal counsel, and that, to avoid potential criminal prosecution, Ramsey County must instead pay its front desk workers to do so. This contention is not only absurd, but runs afoul of the Tenth Amendment. *See City of Chicago v. Sessions* (finding a federal statute requiring city employees to provide immigration-related information to the federal government violated the Tenth Amendment because it "supplant[ted] local control of local officers" and "redistributed local decision-making power by stripping it from local policy makers and installing it instead in line-level employees"). Clearly, such a criminal investigation is not the Government's true purpose here. Its true purpose is clear: to coerce RCBC into assisting

---

[2] To the extent the Government was aware of this full contents of the document, and thus deliberately and materially misled this Court, such misconduct warrants sanctions, including quashing of the Subpoena. *See In re Grand Jury Subpoena served upon Edward Kiefaber et al.*, 774 F.2d 969, 975 (9th Cir. 1985) (quashing grand jury subpoena as sanction for misconduct in grand jury proceeding, reasoning "no sanction, short of stopping the flow of information to the grand jury altogether, would [bring] the government to the realization that its conduct in this action was unacceptable, and would deter the government in future cases . . ."), *vac'd and dismissed as moot*, 823 F.2d 383 (9th Cir. 1987). RCBC also reserves its right to seek all other available sanctions, including attorneys' fees, which this Court has inherent authority to award. *See* Fed. R. Crim. P. 57(b); *United States v. Gonzalez-Lopez*, 403 F.3d 558, 564 (8th Cir. 2005).

[3] In light of the Government's focus on legal guidance, RCBC maintains its objection on privilege grounds and reserves its right to object to any and all requests in the Subpoena on the basis of attorney-client privilege and/or the attorney work-product doctrine.

with achieving the Government's immigration policy goals. This purpose is not only an improper abuse of the grand jury process, it violates RCBC's Tenth Amendment rights.

## II.     The Government Waived Its Opposition To The Majority of RCBC's Arguments By Failing To Respond to Them.

The Government's fourteen-page consolidated opposition brief not only violates this Court's February 2, 2026 Order requiring separate "responses," it fails to address nearly all of RCBC's arguments. This failure to respond constitutes waiver. *See United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023) (holding that waiver and forfeiture principles apply in "both civil and criminal cases, in the first instance and on appeal"); *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("The principles of waiver apply to the government in criminal cases as much as to a private party in civil litigation."); *see also Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (failure to oppose a basis for a motion constitutes a waiver); *Doll v. Trellis Walnut Towers LLC*, No. 24-CV-136 (ECT/TNL), 2024 WL 4355084, at *3 (D. Minn. Sept. 30, 2024) ("A litigant's complete failure to respond to an opposing party's argument is often construed as a waiver.").

*Dowdell* is particularly on point. In *Dowdell*, the Third Circuit found that the government waived and forfeited potential arguments by failing to raise them in response to a defendant's motion. 70 F.4th at 138, 143. The court emphasized that waiver and forfeiture serve important judicial interests, including "protecting litigants from unfair surprise," "promoting the finality of judgments," and "conserving judicial resources," reasoning "[i]n our justice system, litigants, not the courts, choose the facts and arguments

13

to present." *Id.* at 141 (quotation omitted.) These bedrock principles of our adversarial justice system apply in equal force within the Eighth Circuit. *See, e.g., Ivey v. Audrain Cnty.*, 968 F.3d 845, 851 (8th Cir. 2020) (explaining that "the principle of party presentation counsels against adopting theories of a plaintiff's case that he does not advance" and declining to "reconfigure and reframe the plaintiff's case"). Like in *Dowdell*, the Government's failure to respond to RCBC's arguments in its briefing waived any potential arguments it might have asserted, but chose not to.

The Government's failure to respond to RCBC's constitutional concerns is particularly egregious. One primary basis for RCBC's motion is the Tenth Amendment, which is cited throughout its brief to argue there is no proper purpose for investigating a local government's level of voluntary cooperation with immigration enforcement, and that coercing RCBC's assistance with immigration enforcement through the threat of criminal prosecution violates RCBC's Tenth Amendment rights. (*See* RCBC Br. at 13, 16, 17, 18, 23, 24, 25, 27.) In its opposition, the Government failed to acknowledge the Tenth Amendment's existence, let alone respond to any of RCBC's arguments. If the Government had an argument that its Subpoena does not violate the Tenth Amendment, it is waived.

## CONCLUSION

The Government's claimed justification for the Subpoena appears to rest upon a concerning misrepresentation to the Court. But even taken at face value, the Government's stated purpose cannot survive scrutiny in the context of the clear, improper purpose for the Subpoena. And just as the Government's claimed justification is clear pretext, the

14

Government has waived its ability to argue that its Subpoena is anything other than what

it is: a violation of the Tenth Amendment. Accordingly, the Subpoena should be quashed.

Dated: March 16, 2026                       **MASLON LLP**

                                            By: _____
                                            Steven L. Schleicher (#0260587)
                                            225 South Sixth Street, Suite 2900
                                            Minneapolis, MN 55402
                                            (612) 672-8200
                                            Email:   steve.schleicher@maslon.com

                                            **ATTORNEY FOR THE RAMSEY COUNTY
                                            BOARD OF COMMISSIONERS**

15